Western Union Telegraph Co. v. Robinson.

WESTERN UNION TELEGRAPH CO. v. ROBINSON.

(*Knoxville.* November 13, 1896.)

1. EVIDENCE. *Burden of proof.*

The plaintiff is not required to prove affirmatively the time when the unconsciousness of a dying person occurred, in an action against a telegraph company for failure to promptly deliver a message summoning a minister of the gospel to administer the rite of baptism and other consolation to such person, where the declaration avers that the minister arrived, by reason of the delay in the delivery of the message, after the person had become unconscious, but would have reached her in ample time if the message had been promptly transmitted and delivered. (*Post, pp. 643, 644.*)

2. SAME. *Weight and effect of.*

In an action by a father to recover damages of a telegraph company for its failure to promptly deliver his message summoning a minister of the gospel to the bedside of his dying daughter, whereby she was deprived of the rite of baptism and other spiritual consolation in the hour of dissolution, it is wholly immaterial that the daughter may have mistakenly supposed that the minister had power to admit her into the church. (*Post, pp. 644, 645.*)

3. TELEGRAPH COMPANY. *Rule as to delivery beyond a half mile from the office.*

The existence of a rule that free delivery of telegraphic messages will not be made outside the limit of half a mile from the office, will not excuse a telegraph company for failure to promptly deliver a message outside that limit, when it appears that the rule was never published, observed, or enforced by the company; that neither the public nor the plaintiff knew of its existence; that the company's agent received the message and promised prompt delivery without demanding extra compensation, and that it was actually delivered, but after undue delay. (*Post, pp. 645-647.*)

Western Union Telegraph Co. *v.* Robinson.

4. VERDICT. *Not excessive.*

·A verdict of $500 against a telegraph company, for failure to promptly deliver a telegram sent by a father, summoning a minister of the gospel to administer the rite of baptism and other spiritual consolation to a dying daughter, while full and ample, does not evince such passion, prejudice, corruption, or caprice on the part of the jury as justify this Court in setting it aside as excessive. (*Post, pp. 647, 648.*)

---

### FROM RHEA.

---

Appeal from Circuit Court of Rhea County. JAS. G. PARKS, J.

V. C. & N. Q. ALLEN and L. R. CAMPBELL for Telegraph Co.

BURKETT, MANSFIELD & MILLER for Robinson.

SNODGRASS, Ch. J. The defendant in error sued the telegraph company for damages for the negligent failure to transmit and deliver from the town of Evansville, Tenn., a telegram addressed to J. A. Whitner, Dayton, Tenn. The declaration alleges that, on or about August 19, 1895, the plaintiff's minor daughter, Katie, was dangerously sick and expected to · die; that she had professed the Christian religion and desired to be united with the church of God, and that said Whitner should confer the rites of baptism and admit her into the church of which he was a minister—the nearest available minister of the

said church to the residence of the plaintiff. The message was in the following words:

"EVANSVILLE, TENN., August 19, 1895.
"*To Rev. Whitner, Dayton, Tenn.:*

"My daughter Katie is dangerously sick. Wants to be baptized. Come to Washington at once. Wire me at Evansville at once.      T. J. ROBINSON."

This message was delivered to defendant at the town of Evansville, Tenn., at its receiving office at that point, and charges for its transmission to Dayton paid in advance (all that was demanded by the agent who received the message). The message was received about dark, the agent receiving it stating that it could be delivered that night, and that he would do his best to get it through. Evansville and Dayton were on the same railroad and only a few miles apart, and the home of the plaintiff was near Evansville and in the vicinity of Washington, Tenn. It appears in evidence that the message was received at Dayton about 7:55 P.M. on the night of its transmission; that the messenger boy of the office had left before the telegram was received, and the agent at Dayton made no effort to procure his return or to secure any other messenger in order to deliver the message to Rev. Whitner, who, it appeared, lived in the town of Dayton, just beyond the corporate limits, but within the improved portion of the place, and a little more than one-half a mile from the telegraph office. The message was

sent to him the next morning, when he went immediately to Washington, and found that the young lady was dead. He reached there about nine o'clock and she had been dead about an hour. He stated that he would have gone the night before if he had received the message, and that if he had reached there in time he could have baptized the young lady and asked her the necessary questions and could have reported the same to his session, and felt sure she would have been admitted had she lived. The law of the Cumberland Presbyterian Church—his church—required the action of that church session before members could be admitted.

The other evidence material to be noticed in addition to that respecting the mental anguish suffered by the father in consequence of the nonarrival of the minister, was offered by the defendant respecting the custom of its office boy, not very material to be stated, and the fact that it had a rule not to make free delivery beyond a half mile, this not being very much more material than the other, inasmuch as it seemed to be a rule laid away, and of the existence of which nobody was advised, and particularly the plaintiff, nor does it appear that it was observed or required to be. The testimony in this case shows no failure to deliver any message received, addressed to the residents of Dayton, but, on the contrary, that the agent would frequently make delivery at points farther than one-half a mile, and sometimes at night, for accommodation, when he

13 P—41

thought the message was important.  That there was ever any refusal to do so does not appear.

On this proof, upon defendant's plea of not guilty, trial being had, verdict and judgment were rendered for $500, and the defendant appealed in error.    Errors assigned are:

First, refusal of the court to charge that if the proof establishes that Rev. Whitner lived more than one-half mile from the telegraph office, and that the company had a rule that messages beyond that limit were not to be delivered free of charge, then the company will not be liable for a failure to deliver, unless an arrangement was made with the company to deliver the message in this instance.

Second, because there was no evidence to support the verdict.

Third, because the verdict was excessive.

Fourth, because the Court erred in charging the jury as follows:  "If the proof should establish that the Rev. Whitner lived more than a half mile from the defendant's Dayton office, and that the defendant had a rule that they would not deliver messages free outside of a half mile limit from the office of destination, then if the plaintiff or the agent who sent his telegram had notice of such rule, it would have been the duty of the plaintiff or his agent to arrange with the defendant for the delivery of the message, and, if they failed to do this, the company would not be liable for any failure to deliver the message outside the half mile limit.    On the

other hand, if the proof shows that the plaintiff nor his agent had knowledge of the existence of such a rule, and the defendant received a message for transmission and delivery without calling attention to such rule, it would have been its duty to use active diligence in delivering it if the addressee resided within a reasonable distance from the defendant's office.''

Taking up these objections, not according to their order, but in the most convenient form for presenting them, we dispose of the question first that there is no evidence to sustain the verdict.   On this it is insisted by plaintiff in error that the declaration alleges the young lady became unconscious and died before the minister reached there, and that it does not appear in evidence that she did not become unconscious before he could have arrived, had the telegram been delivered in time.

It is true that the declaration averred that she became unconscious, though it is not stated at what time.   It is stated in the same connection, however, that had the message been promptly and properly transmitted and delivered, the minister would have duly come to Washington, as requested, and have arrived at the home of the plaintiff in ample time to have administered to the spiritual wants and requirements of the plaintiff's daughter, which at least negatives the supposed inference from the averment of unconsciousness that it resulted earlier than the minister could have arrived.   It was not essential to prove affirmatively, under this declaration, that she did not

become unconscious before the minister could have reached her father's home. There is no presumption, from the declaration taken entire, that she did, but, on the contrary, that she did not.

It is next insisted that the daughter's object was to be united with the church, and that as it appears from the testimony of the minister that she could not have become a member, according to the regulations of that church, until after the meeting for that purpose; therefore, the nonarrival of the minister was immaterial, and that the anguish experienced by the father could not have any foundation on that account. There is nothing in this objection. It was the daughter's desire, which the father knew, to be baptized, and to have the minister do what he could to unite her with the church. What the effect or noneffect as to the actual uniting herself to the church may have been was not the question. She had the right and the desire to have the attendance of the minister for this purpose, and the father must necessarily have suffered just as much from the minister's failure to arrive and administer to his daughter what she desired to have done for her consolation and support in the hour of death, as though it would have effectuated a complete church membership. What would have been the effect of it is wholly immaterial to consider. The girl desired to do all she could, and the minister testified he would have done all he could to effectuate her purpose. The anguish of the father in this disappointment could hardly

have been less keen than it would have been in consequence of the fact that, after all was done that could be, it might have been supposed necessary that still further action be taken by the church.

The suit is not for any damages which resulted from wrong *to the girl or the failure to accomplish her admission into the church, but for the suffering endured by the father because of his disappointment in the failure of the minister to arrive and afford the daughter whatever help and consolation he could, in her effort to prepare, by baptism and other services which he could render as a minister of God, in her impending dissolution. It may be a matter of doubt what the effect of it all would have been, and whether baptism alone of a repentant believer might not have been sufficient for all practical purposes of accomplishing her desire. This, of course, we cannot decide, but, whether true or not, it is clear that these were things desired with great tenderness and anxiety by the father, and that his anguish would be naturally very great; that he was not able to have them done because of the defendant's negligence.

It cannot be decided that he suffered no pain in consequence of being unable to accomplish any of the things desired, because, possibly, he could not have accomplished all.

There is no error in the charge of the Court as to the rule about delivery within one-half a mile of defendant's office, first, because it does not ap-

pear that the public, and still less that plaintiff, had any knowledge of such rule, and it not only does not appear that he was informed of the rule, but, on the contrary, that he was advised by defendant's agent, to whom he delivered the telegram and to whom he paid all that was asked for its transmission and delivery, that it could be delivered that night.

Dayton, we. can judicially know, is one of the smaller towns of the State, and, presumably, when the defendant's agent took the message addressed to a resident of that town, with the statement by him that it could be delivered, and, without any inquiry as to distance, or knowledge on the part of plaintiff or his agent of any rule not to deliver beyond a half mile, or suggestion of any such rule by the receiving agent of the company, who received for that proposed transmission and delivery all the compensation it asked, its purpose and contract was to deliver, and the plaintiff was not required to make, or show that he made, further inquiry on the subject. It might be different had the addressee lived in a large city, and probably at a great distance from the telegraph office. Besides, as already stated, it appears in evidence that though there was a rule of the company that in towns of the size of Dayton delivery would be made only within the one-half mile limit, it does not appear that the company required or enforced the observance of this rule, or took any means to inform its

patrons of the existence of such a rule, and the company's agents did not themselves conform to it, but, on the contrary, delivered messages beyond the limit, and, in fact, delivered this one beyond the limit, though too late to accomplish its purpose. A rule merely made without notice to those who are to be affected by it, and without exaction of conformity to it, and which is not in fact observed by the company itself, cannot, as a protection against liability, be laid away in the secret consciousness of the agents of the company, unknown and unobserved, until the occasion arises to apply it, on account of liability incurred by failure to deliver, as in this case.

Finally, as to the excessiveness of this verdict. As already stated, it is for five hundred dollars. The question as to the excessiveness is not, of course, an original one addressed to us. We are not to render the verdict, but merely to control it as against the passion, the prejudice, the corruption, or unaccountable caprice of the jury; if none of these things appear or may be inferred from the extravagance of the verdict or other facts in the record, we do not attempt to control it. Of course, as we have before intimated, in cases of this character, where the damages are for mental anguish, purely extravagant and extraordinary verdicts will not be tolerated, yet, within reasonable limits, the discretion which exists in the jury will not be controlled by us. In this case, we cannot say that the

amount given, while a full and ample consideraticn, is one evincing passion, prejudice, corruption, or caprice. The negligence of the defendant was gross and inexcusable, and about a matter which the terms of the telegram plainly showed not only permitted no delay, but called for the exercise of a reasonable diligence as a matter of business and a matter of humanity. We are not disposed to encourage negligence of this character by the enforced reduction of verdicts given against it by way of smart money or as compensatory. We cannot disturb this judgment on that account, and it is affirmed.