W. B. DOWDY and wife v. WESTERN UNION TELEGRAPH
COMPANY.

(Decided April 25, 1899).

*Telegraph Companies—Agents—Negligence—Mental
Anguish.*

1. Agency is a matter of law purely, when the facts are undisputed.
2. Where by the custom and rules of the defendant company, their
   telegraph offices at Sanford and Aberdeen, two places on the
   Augusta Air Line R. R., were closed to public business between
   7 o'clock P. M., and 7 o'clock A. M., and between those hours
   the night operators of the Railroad Company were on duty for
   railroad business only, but the offices were not in fact closed,
   and the night operators received messages for transmission
   and the usual charges, which were both turned over to the
   day operator next morning. Held, that the night operators
   were agents of the Telegraph Company as well as of the Rail-
   road Company, both for transmission and delivery.
3. The defendant company cannot keep its offices open, receive mes-
   sages for pay, and then when a negligent delay in their deliv-
   ery service occurs, screen themselves by saying that the per-
   sons who are in their places of business take the messages and
   receive payment therefor are not its agents.

CIVIL ACTION for damages for mental anguish occasioned
by negligence in delivery of a message, tried before *Timber-
lake, J.,* at September Term, 1898, of CHATHAM Superior
Court.

The plaintiffs resided at Sanford, on the Augusta Air Line
Railroad. The male plaintiff went on business to Aberdeen,
on the same R. R., leaving at home his wife and infant child.
On February 21, 1898, about 2 o'clock p. m., the child became
suddenly very ill. That night between 8 and 9 o'clock, Mrs.
Dowdy sent to the telegraph office, at Sanford, to be trans-
mitted to her husband, the following dispatch:

Sanford, N. C., Feb. 21, 1898.

To W. B. Dowdy, Aberdeen, N. C.:

Come home at once.   Baby is very sick.

MRS. W. B. DOWDY.

The dispatch was sent and was received by the operator at Aberdeen at 9:45 that night, but was not delivered to W. B. Dowdy until next morning at 7 o'clock, when it was handed to him along with another dispatch, dated February 22, 1898, informing him of the death of his child, which occurred at 5 o'clock that morning.

If the first dispatch had been delivered in time the plaintiff would have taken train, known as "the Atlanta Special," which passed Aberdeen at 12 o'clock that night, and arrived at Sanford at 1 o'clock same night.   As it was, he reached Sanford next day at 10 o'clock a. m., and found his wife weeping and in great distress.   Mrs. Dowdy testified, it would have been a great comfort to her to have had her husband with her then.   Baby cried for its father, and it greatly distressed her, that it cried for him and he was not there. When the dispatch was carried to the telegraph office for transmission, the messenger was assured by the operator in charge, that it would be delivered all right, as it was known where Mr. Dowdy lodged at Aberdeen.   With this assurance he paid for the message, and reported to Mrs. Dowdy what the operator said.

The defense was that according to the rules and custom, the telegraph lines were closed to business of the public between 7 p. m., and 7 a. m., and were operated by Railroad night officials, for Railroad business, who, while they received messages, as matter of accommodation to the public, and pay for transmission, reserved both for the telegraph operators next morning, who attended to the business when they came

on duty after 7 o'clock. The defendant insisted that these night operators were not agents of the Telegraph Company, but of the Railroad Company, and that the defendant was not liable for their negligence in either transmission or delivery, if negligence there was—which was denied.

His Honor declined to give special instructions asked for on this line of defense. Defendant excepted. Verdict for plaintiffs, assessing damages at $1250.

Judgment. Appeal by defendant.

*Mr. R. C. Strong,* for defendant (appellant).
*Mr. H. A. London,* for plaintiffs.

Montgomery, J. This action was brought to recover damages for mental anguish alleged to have been suffered by the plaintiffs on account of the alleged negligent failure of the defendant to deliver a certain telegraphic despatch sent by the *feme* plaintiff to the male plaintiff, her husband. In the wife's telegram she informed the husband that their child was very sick, and requested him to come home at once. The wife was at Sanford and the husband at Aberdeen, both places being on the Augusta Air Line Railroad. The defense of the defendant as set up in their answer was that the message was not delivered to their agent at Sanford, nor transmitted to their agent at Aberdeen, but was delivered for transmission to the night operator of the Seaboard Air Line system of Railroad, at Sanford, and was received by the night operator of the same Railroad Company at Aberdeen, and that upon the delivery of the telegram to the defendant's agent at Aberdeen, when he went on duty the next morning at seven o'clock, by the night operator of the Railroad Company, it was promptly delivered to the sendee, the male plaintiff.

J. M. Dowdy, the father of the male plaintiff, testified that he delivered the telegram to Huntley, the agent of the defendant at Sanford, on the 21st of February, 1898, at eight p. m., to be transmitted to the agent of the company at Aberdeen for the sendee, the male plaintiff, and paid the charges. Huntley denied that he received the telegram from J. M. Dowdy. He said, however, that on the next morning on going to his work in the office of the defendant company, he found on the hook the message; that it was attached to a Western Union Telegraph Company blank; that he put it "Western Union Telegraph Company's business," and that the night operator gave him the money for transmitting the message which he turned over to the defendant company.

S. A. Johnson, a witness for the defendant, testified that he was the night operator of the S. A. L. R. R. Co., and that he received the telegram at 9:45 p. m., on the 21st of February; that when he received it he wrote it out on a Western Union blank; that when messages not on railroad business came he always did this and, after making memoranda thereon as to the time of transmission and receipt, according to rules, hung them on a hook in the office where the Western Union operator could get them when he came on duty in the morning. Johnson further said that he never took such messages for delivery; that there was no provision made for delivering messages at night. Johnson, Huntley and W. F. Williams, another witness of the defendant, all testified that at Sanford and Aberdeen the custom of the defendant company was to close those offices, for public business, from 7 p. m., to 7 a. m., of each day, and that after 7 p. m., the night operators of the Railroad Company went on duty for railroad business only. The house in which the male plaintiff was staying at Aberdeen was about a fourth of a mile from the office of the defendant company, and Johnson, the night

operator, knew where he was when the telegram was received.
There was a train leaving Aberdeen for Sanford at 12.02
a. m., and the plaintiff could have arrived at the latter place
an hour afterward had the telegram been delivered to him
before the departure of the train from Aberdeen.   It was not
delivered to him until 7 a. m., the next morning, too late for
the plaintiff to arrive at Sanford before the baby's death. The
defendant's contentions were that the defendant company had
the right to establish reasonable rules for the regulation of its
business, and in the exercise of that right that they had made
a rule that their offices at Aberdeen and Sanford should be
closed for public business each day from 7 p. m. to 7 a. m.;
that the office hours for business at Sanford when the telegram
was delivered there to the night operator of the Railroad
Company, having been over, the defendant could not be held
liable for any neglect on the part of the railroad operators at
either Sanford or Aberdeen as to the delivery of the telegram
to the male plaintiff; that even if the person who received the
telegram at Sanford had been the agent of the defendant he
had no right or authority to receive it contrary to the rule of
the company closing the office at 7 p. m.; and that even if
the agent of the defendant at Sanford had received the tele-
gram either before or after the office hours at that point,
and had transmitted it to the agent at Aberdeen after the
close of business there, the defendant would not be liable for
the failure of the agent at Aberdeen to deliver it to the sendee
unless he had failed to deliver it within a reasonable time
after the opening of the office for business on the morning of
the 22nd.

These contentions of the defendant were the subject matter
in various forms of those of its special prayers for instruc-
tions, which His Honor refused to give.   His Honor's view
of the case as is seen in his charge to the jury was that, upon

the testimony of the defendant's witnesses, the person who received the telegram at Sanford, and the one who received it at Aberdeen, notwithstanding that they were in the employment of the Railroad Company for receiving and transmitting of railroad business dispatches, were also the agents of the defendant, and we think his view the right one.    These night operators were in the offices of the defendant, and were using their wires and their instruments.    The offices were not closed in fact, but open, and the persons who were in charge were receiving messages and making the usual charges therefor.    The defendant company can not keep its offices open, receive messages for pay, and then when a negligent delay in their delivery service occurs, screen themselves by saying that the persons who are in their places of business, take the messages and receive payment therefor are not its agents. Johnson, the night operator at Aberdeen, who received the message from Sanford, stated that when he received such messages he made memoranda on them at the time of their receipt according to rules, and hung them on the hook for the agent of the company next morning.    What rules did he refer to ?    Certainly the railroad authorities had nothing to do with business other than that which concerned railroad transactions.    The rules must have been for the benefit of the defendant company, and to keep accounts and checks between and on the agents at the different stations who were receiving and transmitting telegrams and receiving charges therefor. Agency is a matter of law purely when the facts are undisputed.    The facts in this case as to how this telegram was received and transmitted are undisputed, and they, in law, in our opinion, constitute the person in the office at Sanford, to whom the message was delivered for transmission, and the one in the office at Aberdeen who received it, agents of the defendant, and that was the view His Honor took of

the matter, and there was no error in the manner in which he submitted the case to the jury. From the view we have taken of the legal relation between the persons in the offices of the defendant at Aberdeen and Sanford who handled the messages any discussion of the matters argued by the defendant's counsel involving the right of the company to establish reasonable office hours, and the benefits attendant upon that right, has become unnecessary.

Affirmed.

FAIRCLOTH, C. J., dissents.