## W. L. HENDRICKS v. W. U. TELEGRAPH COMPANY.

(Decided April 3, 1900.)

*Telegrams—Reasonable Diligence—Non-Delivery—Notice to the Sender—Inquiries for Sendee—Negligence.*

1. Where a telegraph company receives a message for delivery, which it fails to deliver with reasonable diligence, it becomes *prima facie* liable, and must allege and prove matters of exculpation for the failure to deliver.

2. The same liability is incurred by failure to deliver within a reasonable time, and must be accounted for. The length of the delay may affect the *quantum* of damages in certain cases.

3. Rules without notice to those to be affected by them, and which are not observed by the company itself, afford no protection against liability for failure to deliver.

4. It is the duty of the company, in all cases practicable, to promptly inform the sender of a message, that it can not be delivered; its failure to do so is evidence of negligence, as well as its failure to make diligent inquiry of persons likely to know of the residence or whereabouts of the sendee.

5. Frequently the question of negligence depends on a combination of facts, and not merely on any one fact.

CIVIL ACTION for damages for failure to deliver two messages to the plaintiff announcing the death of his sister, tried before *Coble, J.,* at Spring Term, 1899, of LINCOLN Superior Court.

*Issues.*

1. Did the defendant negligently fail to deliver the messages described in the complaint, or either of them? Answer. "Yes."

2. What are plaintiff's damages? Answer. "$1,000."

Judgment accordingly for plaintiff. Appeal by defendant. The facts are stated by DOUGLAS, J.

This was an action brought by the plaintiff to recover damages, for the negligent failure of the defendant to deliver two telegrams, one of which was sent by his brother-in-law, George Moore, and the other by his mother. The first of said messages, sent on the 12th day of November, 1895, was as follows: "Lincolnton, N. C., November 12, 1895. To W. L. Hendricks, care Gaffney Cotton Mills, Gaffney, S. C. Presh died this morning. Geo. Moore."

The second was sent on the 13th day of said month, and as in the following words: "Come quick, will bury Presh to-morrow." These messages were addressed to the plaintiff, who was then at Gaffney, S. C., in care of the Gaffney Cotton Mills, the plaintiff being at the time employed in said mills as a "boss" in the card room. The toll on the first message was prepaid in Lincolnton, from which place it was sent, and the second message was sent "collect." Plaintiff lived at Gaffney, S. C., at the time the messages were sent, and had lived there for two months in a house on Limestone street, within three or four hundred yards of defendant's office, which was also situated on said street. The evidence tends to show that plaintiff was well known in said mills, and that he worked in the carding room. He got his mail regularly at the postoffice, and was known at some of the leading stores and other places of business in the town. He left Gaffney on the 14th day of November to go to Cherryville, N. C., which is near Lincolton, in response to a telegram sent to him by one Rhodes, from that place, and which was received at defendant's office in Gaffney, and delivered to him before he left on the 14th of November.

His sister died on the 12th of November, and he did not know of her sickness or death till the 15th, the day after she was buried, when he met, in Cherryville, one of his sisters,

who told him of it.    When he returned to Gaffney, about ten days afterwards, he inquired at defendant's office for the two messages, and they were found by the operator in a basket of papers in a corner of the office, and handed to plaintiff.    The operator at Lincolnton did not hear anything from the operator at Gaffney concerning the first message he sent on the 12th,'nor did he hear anything from him about the second message, which was sent on the 13th, till after the body of Mrs. Moore, the sister of the plaintiff, had been taken to the "burial place," some ten or twenty miles from her home, when the operator at Gaffney informed the operator at Lincolnton by a service message that the plaintiff could not be found, and that he would have to collect the charges on the two messages.

The operator at Gaffney, when he received the first message on the 12th, gave it to the messenger, a boy about twelve years of age, and if we accept the latter's testimony as true, though there was much conflicting evidence, he went to the Gaffney Mill and inquired for the plaintiff, and was told by Mr. Wardlaw to go through the mill and look for him, but he did not go through the mill, but only through a part of it. He did not go into the carding room, which was a part of the mill, and the very place where the plaintiff worked.    He inquired of only four or five persons, whose names he did not know, and left the mill and made his other inquiries in a few places in the town, and, failing to find the plaintiff, he returned to the telegraph office and hung the message on the file.

What was done with the message that was sent on the 13th does not appear, though it appears to have reached Gaffney about 11.40 o'clock that day, in time for Mr. Hendricks to have reached his sister's home before the funeral.

The messenger did not return to the mill, nor did he ever

tell the mill officers that he had a telegram from the plaintiff, or in any way inform them that the message addressed in their care, nor that it was of serious importance and required prompt delivery, nor did he leave or offer to leave the message with any of them, nor insist that they should receive it for Mr. Hendricks.

The operator at Gaffney did not send any "service message" to the operator at Lincolnton notifying him of the failure to deliver the message of the 12th, and asking if Mr. Hendricks had a residence in Gaffney, and to make inquiry of the sender of the message as to where he lived in the town, nor did he ask the operator at Lincolnton for a better address.

Defendant assigns as errors the following:

1. His Honor's overruling defendant's objection to the question asked the witness, Reinhardt, which question was as follows: "Could you have found out from the plaintiff's family that plaintiff lived in Gaffney, if you had been informed that the telegram had not been delivered?" to which ruling defendant excepted. (Exception No. 1.)

2. His Honor's refusal to give the instructions asked by defendant in the course of the trial, numbers 2, 3 and 4, which are as follows:

2. That the defendant company was not bound to communicate either with Reinhardt or Moore. The fact that the message could not be delivered, if they believe from the evidence they lived beyond the "free delivery limits" from the office, and unless they find the defendant company negligent in other respects, then they should find the first issue, "No." (Exception 2.)

3. That if the defendant company made due inquiry for the addressee at the Gaffney Cotton Mills, in whose care it was sent, and failed to find him there, they used due diligence, and

unless you find that the defendant was guilty of negligence in other respects, they should find the first issue, "No." (Exception 3.)

4. That it would not be negligence in the defendant not to send a message asking for a better address, unless they believe that by sending such message the company could have obtained a better adddess, and unless they find that the defendant was guilty of negligence in other respects, they should find the first issue, "No." (Exception 4.)

3. For errors committed by his Honor in giving the charges requested by the plaintiff, numbered 1, 2, 3 and 6, and which are as follows, with the modification made by the Court:

1. The fact that the messages were addressed in care of the Gaffney Manufacturing Company, or Cotton Mills, and that the defendant's messenger made inquiry at the mill or at the office of the company, and was informed that the plaintiff was not there [or was not employed there,] did not excuse the defendant from making diligent inquiry in Gaffney for the plaintiff's whereabouts, and if it failed to make such inquiry, there was negligence on the part of the defendant, and the jury will answer the first issue, "Yes." (Exception 5.)

If the plaintiff, at the time the messages were received by the operator at Gaffney, had a residence or home in the said town, it was the duty of the defendant's servants in Gaffney, who had charge of the message, to have made inquiry for the plaintiff at his residence, and if the jury find the defendant, by its servant, failed to make such inquiry, and by so doing failed to deliver these messages, it was guilty of negligence, and the jury will answer the first issue, "Yes," unless by diligent inquiry the defendant could not have ascertained that the plaintiff had a residence in Gaffney. (Exception 6.)

3. That it was the duty of the defendant to have made inquiry at the postoffice for the plaintiff, if the plaintiff had

for some time been receiving mail at the postoffice, and if the jury find that defendant's servants failed to make such inquiry, it was negligence, and the jury will answer the first issue, "Yes." (Exception 7.)

6. That it was the duty of the defendant's operator at Gaffney, if the plaintiff could not be found and the message delivered, to have notified the operator at Lincolnton of the fact, so that the latter could get a better address or additional information as to the whereabouts of the plaintiff, either from the sender of the message or R. S. Reinhardt, the agent, if Reinhardt was the agent.

"Unless the jury find that by so notifying the operators at Lincolnton, the defendant could not have obtained a better address." (Exception 8.)

*Messrs. Jones & Tillett,* for appellant.
*Messrs. Burwell, Walker & Cansler,* for appellee.

DOUGLAS, J., after stating the facts. The first exception can not be sustained. The question was competent, but in any event was harmless, as the witness answered that he did not know. Where a party is seeking to prove a fact, and the witness answers that he does not know, the answer is in fact more favorable to the opposite party than if the question had been excluded, because it prevents any unfavorable inference. The point so clearly presented and elaborately discussed, whether the defendant company was bound to make inquiries beyond the local limits of free delivery, does not appear to arise in this case, in the view we take of it. It is well settled that where a telegraph company receives a message for delivevry and fails to deliver it with reasonable diligence, it becomes *prima facie* liable, and that the burden rests upon it of alleging and proving such facts as it relies upon to excuse

its failure. *Sherrill v. Telegraph Co.,* 116 N. C., 655;
S. C., 117 N. C., 352; Gray Com. by Tel., sec. 26; Thompson Elec., sec. 274, and cases therein cited. The failure to deliver within reasonable time is quivalent to non-delivery, as far as the principle of liability is concerned, although the length of the delay may affect in certain cases the actual quantum of damages. The object of using the telegraph is its capacity for almost instantaneous transmission of intelligence, and if this purpose is defeated there is no consideration for the increased cost of its use. In every respect except that of time, the postal service, with its small cost and greater secrecy, would be preferable.

In the case at bar it is admitted that the telegram was not promptly delivered, but the defendant insists that its non-delivery was not due to any negligence on its part, but solely to its failure to find the addressee, after every reasonable effort to do so. It does not set up any contractual limitations of liability. In fact it appears that the plaintiff addressee lived within the free-delivery limits of Gaffney. The usual printed terms of the company are not set out in the record, but they are on the back of all blanks of the defendant company, and can be found on page 436 of Croswell's Law of Electricity. The only difference appears to be that the author has omitted the words "any message" in line 27 of the form after the word "forward." The clause under consideration is as follows: "Messages will be delivered free within the established free-delivery limits of the terminal office. For delivery at a greater distance, a special charge will be made to cover the cost of such delivery." By its very terms this provision does not apply to the office from which the message is sent. It may be further noted that the company does not say that the message will *not* be delivered beyond such limits, but that "a *special* charge will be made to

cover the cost of such delivery," which would seem to clearly imply that it would be delivered. No fixed limit of distance nor definite sum is specified, and it is difficult to see how the sender can be presumed to know either in the absence of information from the company.

Many of these printed terms have been held void as contrary to public policy, but even where valid they must be reasonably construed. *Brown v. Telegraph Co.,* 111 N. C., 187; *Sherrill v. Telegraph Co., supra; Dowdy v. Telegraph Co.,* 124 N. C., 522; *Laudie v. Telegraph Co., Ibid,* 528.

The following comment by the Court in *Telegraph Co. v. Robinson,* 13 Pickell, 97 Tenn., 638, is peculiarly appropriate: "A rule merely made without notice to those who are to be affected by it, and without exaction of conformity to it, and which is not in fact observed by the company itself, can not, as a protection against liability, be laid away in the secret consciousness of the agents of the company, unknown and unobserved, until the occasion arises to apply it, on account of liability incurred by failure to deliver."

In the case at bar this limitation of free delivery limits is invoked only to excuse the agent at the terminal office from not informing the agent at the office of transmittal that the message has not been or could not be delivered. This becomes purely a question of reasonable diligence, and we think is answered by the fact that there was a telephone from the depot, where the office of the defendant appears to be, to the home of the sender. It would seem that ordinary care would require the agent at Lincolnton to step to the telephone and notify the sender that a message of such vital interest had not been delivered. This he doubtless would have done if he had been informed of that fact by the agent at Gaffney. We think that it is the duty of the company in all cases where it is practicable to do so to promptly inform the sender of a

message that it can not be delivered. While its failure to do so may not·be negligence *per se,* it is clearly evidence of negligence. In many instances, by such a course, the damage could be greatly lessened, if not entirely avoided. A better address might be given, mutual friends might be communicated with, or even a letter might reach the addressee. In any event, the sender might be relieved from great anxiety, and would know what to expect. Moreover, it would *tend* to show diligence on the part of the company.

The question as to what would have been the legal effect if the message had been left with the company in whose care it was·addressed, does not arise. The messenger testifies that he went into the office of the Gaffney Cotton Mills and asked Wardlaw if Hendricks was there, and was told to go and look. He did not show the message to Wardlaw or anyone else at the mill, nor did he inform them that it was directed in their care. In spite of a hypothetical answer of the witness Wardlaw, we can not suppose that if he had been informed of the nature of the telegram addressed to one of his employees in his care, he would not have taken some little trouble to have aided in its delivery. The messenger merely asked the postmaster if he knew the plaintiff, but did not ask him if the plaintiff received his mail at that office. These facts, so far from exonerating the defendant, tend to prove its negligence, but as there was some conflicting testimony, as well as other material facts, the matter was properly submitted to the jury, who in all cases have the constitutional right to pass upon the *weight* and *credibility* of the testimony. What is due diligence or reasonable care, the phrases in this case being practically synonymous, are nearly always, if not always, mixed questions of law and fact. Difficult of accurate definition and still more so of determination, they depend upon the relative facts of each case ·and come peculiarly within the

province of the jury. Frequently the question of negligence depends not so much on any one fact as on a combination of facts, and therefore the singling out of any one fact which directly or inferentially is made the turning point in the case might of itself be error.

There does not appear to have been made any effort to deliver the second telegram. As we see no error in the trial of the case the judgment below is

Affirmed.