BRIGHT v. WESTERN UNION TELEGRAPH CO.

(Filed April 14, 1903.).

1. TELEGRAPHS—*Mental Anguish—Relationship.*

　Where suffering actually results from failure to deliver a message, the relationship being one of affinity only, such relationship will warrant recovery for mental anguish.

2. TELEGRAPHS—*Mental Anguish—Relationship.*

　Where a telegram relates to illness or death it is sufficient to put the telegraph company on notice of its importance.

3. TELEGRAPHS—*Mental Anguish—Free Delivery Limits.*

　The failure of a telegraph company to deliver a message is not excused, though it appears that the sender lived beyond the free delivery limits, and extra charge for delivery beyond the limits had not been paid; it not appearing that the sender knew the company had any free delivery limits, or that it demanded payment of any extra charge.

4. TELEGRAPHS—*Mental Anguish—Office Hours—Waiver.*

　Where a telegraph company undertakes to deliver a telegram at other than its office hours it thereby waives the benefit of its office hours.

5. TELEGRAPHS—*Mental Anguish—Damages.*

　A wife, sending a telegram to her husband's uncle from W., announcing the husband's death and that he would be buried in L., was entitled to recover for mental anguish caused by the company's failure to deliver same, and for the uncle's consequent failure to be with her during her journey from W. to L., and at the latter place.

6. TELEGRAPHS—*Mental Anguish—Evidence.*

　In an action for mental anguish from failure to deliver a telegram, the sender may testify as to what he would have done if he had received it.

7. TELEGRAPHS—*Mental Anguish—Evidence—Free Delivery Limit.*

　It is competent to show that a telegraph company had delivered other telegrams beyond the alleged free delivery limits, it being some evidence tending to show that there were no free delivery limits, and if there were, that the company disregarded them.

ACTION by Lillian Bright against the Western Union Telegraph Company, heard by Judge *Thomas A. McNeill* and a

jury, at September Term, 1902, of the Superior Court of ALAMANCE County.

This action was brought by the plaintiff to recover damages for the defendant's negligent failure to deliver a telegram. The plaintiff alleged, and there was evidence tending to show that on the 29th day of May, 1900, she moved with her husband and their children from Liberty, Randolph County, to Wilkesboro, and they were living in the latter place on Friday, the 24th day of August, 1900, when her husband suddenly fell dead upon the street, and that she immediately sent to her husband's uncle, Bob Cooper, who lived at Burlington, N. C., the following message:

"North Wilkesboro, N. C., 8-24, 1900.
"To Mr. Bob Cooper, Burlington, N. C.:
    "Mr. Bright is dead.   Will bury at Liberty Sunday evening.
    (Signed)                         "LILLIAN BRIGHT."

The message was filed with defendant's operator at 8 p. m. August 24, 1900, and was received in Burlington within thirty minutes thereafter.   It was written on one of the company's blanks containing the usual stipulations..   But it was agreed that no stipulation should be binding except the following:

"All messages taken by this company are subject to the following terms: Messages will be delivered free within the established free delivery limits of the terminal office for delivery.   At a great distance a special charge will be made to cover the cost of such delivery."

The toll for the message was prepaid.   Bob Cooper was an uncle of plaintiff's husband and "was devoted to him and her, and they had come to regard him much as a father." They had frequently visited his house since their marriage

in 1892. The father of plaintiff's husband was killed in the war and Mr. Cooper had raised her husband from his infancy and educated him, and he was the plaintiff's nearest living relative. There was evidence tending to show the close and intimate relationship between plaintiff and her husband's uncle, Mr. Cooper, and the parental affection which he entertained for plaintiff and her husband, the evidence tending strongly to show that he stood towards them in the place of a father. The plaintiff testified that her husband "looked upon him (Cooper) as a father and her own father being dead, she likewise was devoted to him and regarded him as a father."

Cooper never received the message, nor did he know of Bright's death until ten days after it occurred, although he was at his home in Burlington during the entire day on which the message was sent and received by the operator at Burlington. He lived near Lakeside Cotton Mills, which is less than a mile from defendant's office in Burlington, though outside the corporate limits, and he had lived there two years and was well known by the leading citizens of Burlington, such as the postmaster, hotel keeper, druggist, lawyers, merchants and policemen. There was a telephone line connecting the telegraph office and the Lakeside Cotton Mill and Cooper was well known by the officers of the mill. When he heard of Bright's death he went to the telegraph office and demanded the message, but the manager was unable to find it and instead of producing the original he gave him a copy. It further appeared that Cooper would have gone to Wilkesboro by the first train, which left at 2:30 a. m. Saturday, and accompanied the plaintiff to Liberty. There was also evidence on the part of the plaintiff that there were no free delivery limits in Burlington and that messages had been delivered outside of Burlington, and the defendant had no rule requiring prepayment of charges for delivery beyond its free de-

livery limits, but collected the charges after delivery, and the charges were for the benefit of the messenger boys.

The defendant introduced evidence tending to show that Cooper was not well known in Burlington that the office hours of the defendant company at Burlington were between 7 a. m. and 7 p. m., though an operator stayed in the office during the night, and he received this message about 8:30 p. m. August 24, 1900. It was delivered the same night to a messenger boy who testified that he inquired of the chief of police and of several prominent persons, and at the post office and various other places, as to Cooper's residence, and could get no information. He then returned to the office and sealed the message and hung it on a hook where it was found the next morning by the manager, the night operator having left the office. The manager delivered it to another messenger boy, who attempted to deliver it the following day, and the manager thereupon sent a service message to the operator at Wilkesboro, asking for a better address, and the operator at Wilkesboro replied that Mrs. Bright had left Wilkesboro and no better address could be secured. This service message was not sent until the afternoon of Saturday. The manager stated that he found the message Saturday morning about 9:30 o'clock on the hook, but that he did not know the contents of it.

The plaintiff introduced in reply the postmaster, who stated that the messenger boy had made no inquiry of him about Cooper, but that he had frequently inquired of him about persons for whom he had messages; that he knew Cooper and had known him before he moved to Burlington, and, if the messenger boy had inquired of him, he could have told him the whereabouts of Cooper.

It further appeared that the plaintiff, Mrs. Bright, remained in Wilkesboro until 2 o'clock p. m. Saturday, August 25, 1900, and neither received a service message nor heard

anything whatever from the message sent to Cooper. With the dead body of her husband, and alone with her three children, she left Wilkesboro at 2 o'clock on the 25th of August and had to 'stop over for the night in Greensboro and renew her journey to Liberty the next day at 12 o'clock. There was no one to assist her or console her, or to look after her husband's remains or to prepare for the interment. She brings this action for damages for the negligence of the defendant in failing to deliver the message so sent by her.

There were many prayers for instructions and many errors assigned, but we think the exceptions of the defendant may be fairly and fully stated as follows:

1. That the court admitted testimony to prove the relationship and state of feeling between Cooper sendee, and Mr. and Mrs. Bright, and allowed it to be considered by the jury to establish the defendant's liability, and that the relationship between the plaintiff and Cooper was too remote to admit of a recovery of damages for mental anguish.

2. That the message did not sufficiently disclose its purpose so as to charge the defendant in damages for failure to deliver it.

3. That Cooper lived outside the free delivery limits and the defendant was not bound to know that fact, or to deliver the message without prepayment of the extra charge as required by the rule of the company.

4. That as the message was not received at Burlington during office hours, the defendant was not bound to deliver it until Saturday at 7 o'clock a. m., the office hours being from 7 a. m. until 7 p. m., and that Cooper could not have reached Wilkesboro before the plaintiff left there, if he had left Burlington after 7 a. m. on Saturday.

5. That the message does not show that the plaintiff desired Cooper to come to Wilkesboro.

6. That the court refused to charge as requested by de-

fendant that if Cooper could not or would not have gone to Wilkesboro if the message had been delivered in time for him to have done so, the plaintiff can not recover actual damages, and the jury should give the plaintiff as damages the cost of the message.

7.   That the court allowed the witness Cooper to testify that if he had received the message in time he would have gone to Wilkesboro by the first train.

8.   That the court permitted the witness Thurston to testify that prior to 1895 he was operator of the defendant at Burlington and that messages were delivered beyond the free delivery limits at that time, especially at Lakeside Cotton Mill.

From a judgment for the plaintiff, the defendant appealed.

*A. L. Brooks, W. H. Carroll* and *W. P. Bynum, Jr.,* for the plaintiff.

*King & Kimball* and *F. H. Busbee & Son,* for the defendant.

WALKER, J., after stating the case.   We are unable to see why the relationship between Mrs. Bright and Mr. Cooper was not such as to form the basis for a recovery of damages in this case.   It was contended by the learned counsel for the defense that there must be consanguinity, or relation of the persons by blood, in distinction from mere affinity or relation by marriage.   We are not aware of any such distinction in cases of this kind by which the right of recovery is altogether denied when there is only affinity, and no authority was cited to us which induces us to think that it exists.   The law does not regard so much the technical relation between the parties or their legal status in respect to each other as it does the actual relation that exists and the state of feeling between them.   It does not raise any presumption of mental

anguish when there is no relation by blood, but if mental suffering does actually result from the failure to deliver a message where there is only affinity between the parties, it may be shown and damages recovered.

A woman suddenly bereft of her husband and who has no father or other relative or friend to whom she can turn in her distress, except the uncle of her husband, might well call upon him for consolation and assistance, especially when, as is abundantly shown by the evidence in this case, he was her husband's nearest living relative and had raised and educated him and was "devoted to her husband and herself," and stood towards them in the place of a parent. She had every right to expect that as soon as the sad news of the death of her husband had reached him, he would come at once to her, and give her that comfort, consolation and assistance which she sorely needed. If he was not her father, he entertained for her all of the tender regard and affection of a parent, and was as much interested in her welfare as if he had been her father, and she could therefore reasonably expect that he would do under the circumstances precisely what her father would have done if he had been living.

It is needless to discuss the question further, as this court has settled it against the defendant. "We do not mean to say," says DOUGLAS, J., speaking for the court, "that damages for mental anguish may not be recovered for the absence of a mere friend, if it actually results; but it is not presumed. The need of a friend may cause real anguish to a helpless widow left alone among strangers with an infant child and the dead body of her husband. In the present case the plaintiff seems to have received the full measure of Christian charity from a generous community, but it may be that she did not expect it, and looked alone to her brother-in-law whose absence she so keenly felt. If so, she may prove it." *Cashion v. Tel. Co.*, 123 N. C., 267.

It is not a valid objection to the plaintiff's right of re-
covery that the message did not sufficiently disclose its pur-
pose, or show that the plaintiff desired Cooper to come to
Wilkesboro.    It has repeatedly been decided by this court, in
cases where the relationship of the parties was not disclosed
and the special purport of the message could not possibly
have been understood, that it was not necessary for the com-
pany to know the relation between the sender and sendee from
the terms of the message, or to know anything more than that
the message is one of importance, and that this should always
be inferred from the fact that it relates to the illness or death
of a person.    When this is the case, it is sufficient to put the
company on notice that a failure to deliver will result in men-
tal suffering for which damages may be recovered.    *Lyne v.
Telegraph Co.,* 123 N. C., 129; *Sherrill v. Telegraph Co.,*
109 N. C., 527; *Hendricks v. Telegraph Co.,* 126 N. C., 310;
78 Am. St. Rep., 658.

The contention that Cooper lived beyond the free delivery
limits of the defendant at Burlington, and therefore the de-
fendant was not bound to deliver the message until the extra
charge for delivery beyond the limits had been paid, is not
tenable.    There is no evidence that Mrs. Bright knew that
the defendant had any free delivery limits, nor is there any
evidence that the defendant demanded of her the payment of
any extra charge or even informed her that there were free
delivery limits at Burlington and that an extra charge was
made by the company for delivery beyond those limits.
*Hendricks v. Telegraph Co.,* 126 N. C., 310; 78 Am. St.
Rep., 658.

The defendant had regular office hours between 7 a. m. and
7 p. m. only, and it received the message at 8:30 p. m.    We
do not think that under the facts of this case its failure to
deliver the message could be excused.    There is one thing
certain that the defendant notwithstanding any office hours

it may have had, undertook to deliver the message Friday evening just after it was received at Burlington, and it thereby waived its right to claim the benefit of the rule as to office hours, even if that rule be a reasonable one.    It does not seem to have occurred to the defendant at the time that it had office hours and was not bound therefore to deliver the message, as it introduced evidence to show that it made strenuous efforts to deliver the message as soon as it was received.    Its reliance now upon the rule would seem to be an afterthought.    It cannot be heard to say that it received and delivered messages only within certain hours, when it appears that at the time this message was received its office was open, an operator was there to receive messages, and a messenger boy was there to deliver them.    In addition to this, it may be said that the company did not deliver the message at all, nor did it send a service message to get a better address until the afternoon of the next day, when Mrs. Bright had left Wilkesboro. Nothing was ever said by the defendant about free delivery limits or office hours, as far as appears, until the answer in this case was filed.

In the case of *McPeak v. Telegraph Co.,* 107 Iowa, 356-364, the court says: "It may be that the defendant can fix office hours which are reasonable. This we do not decide. The company received this message with the understanding that it was to be delivered about 9 o'clock.    The agent at Winfield received it and the company, having undertaken to deliver it, was bound to do so with reasonable diligence.    He was acting within the scope of his agency, although not within the hours fixed for the active discharge of his duties.    This would not relieve the company from discharging the obligation incurred by receiving the message to be delivered out of office hours."    Joyce on Elec. Law, Sec. 761.

The defendant requested the court to charge the jury that if Cooper could not or would not have gone to Wilkesboro

if the message had been delivered to him in time for him to have done so, the plaintiff can not recover any actual damage, but only the cost of the message. This instruction could not have been given by the court without confining the plaintiff's right to damages to those resulting from the mental anguish caused by his failure to be with her at Wilkesboro only, whereas she was entitled to recover damages for any mental suffering arising from his failure to be with her at any time during her long and sad journey from Wilkesboro to Liberty, or at the latter place. He was evidently expected by her to go to Wilkesboro, and the mere fact that the message was sent from Wilkesboro would indicate to him that such was her expectation. If he could not reach that place, then she had the right to expect that he would join her at some intermediate point, or at Liberty.

In this connection may be noticed another of the defendant's objections that the court permitted the witness Cooper to testify that he would have gone to Wilkesboro if he had received the message in time. We are unable to understand why this is not competent. It tended to prove the very fact which the defendant, in the last exception considered by us, asserted it was necessary for the plaintiff to prove in order to recover substantial damages, and it was necessary to prove this fact if the plaintiff sought, as she did by her complaint and evidence, to recover damages for the mental anguish which resulted from his failure to go to Wilkesboro.

The testimony of the witness Thurston that messages were delivered beyond the free delivery limits at Burlington prior to the year 1895, when he was operator for the defendant, becomes immaterial in the view we have taken of the case. If the defendant had any free delivery limits at that place, its conduct shows that it did not rely on the rule as to them in the handling of messages. Besides, the testimony of Thurston, when considered with the other facts and circum-

stances in the case, was some evidence tending to show that there were no free delivery limits, or, if they were ever established, that they had been disregarded by the defendant.

We have given the case a careful and thorough consideration and can not find any error in the rulings of the court below.

*Per Curiam*: Judgment Affirmed.