CARTER v. TELEGRAPH CO.

(Filed May 16, 1906).

*Telegraphs—Evidence—Agency—Office Hours—Waiver of Office Hours—Negligence.*

1. In an action for damages for failure to promptly deliver a telegram summoning a physician, it was competent for the physician to testify that had he received the telegram, he would have gone at once.

2. In an action against a telegraph company, a charge that if the agent at the railroad station received the message and sent it to another station and it was there received by the agent who occupied the office, and was using the wires and instruments of the defendant company, the latter was the agent of the defendant and responsible for reasonable dispatch in the delivery of the message, is correct.

3. A telegraph company has the right to fix hours during which its offices shall be open, provided they are reasonable.

4. The failure to notify a sender of a telegram of the non-delivery thereof is evidence of negligence. If for any reason it cannot deliver the message it becomes its duty to so inform the sender, stating the reason therefor, so that the sender may have the opportunity of supplying the deficiency.

5. Where a message on its face appears to be urgent, the fact that it is offered for transmission after office hours will be no defense to the company if the agent accepts it without reserve.

6. Where a telegraph company undertakes to deliver a telegram at other than its office hours it thereby waives the benefit of its office hours.

7. The receipt of the message without demur or objection on account of its being after office hours, was an implied agreement to deliver it with reasonable dispatch and the failure to deliver within a reasonable time raised a presumption of negligence, and the burden was upon the telegraph company to rebut this presumption, and the court could not have directed a verdict in favor of the defendant, but it was for the jury to say from the circumstances in evidence whether the defendant's agent could reasonably and practically have delivered the message earlier.

ACTION by W. S. Carter and wife against Western Union Telegraph Co., heard by *Judge G. S. Ferguson* and a jury, at the November Term, 1905, of the Superior Court of CHATHAM. From a judgment for the plaintiffs, the defendant appealed.

*H. A. London & Son* for the plaintiffs.
*F. H. Busbee & Son* and *W. A. Montgomery* for the defendant.

CLARK, C. J. The plaintiffs reside at Spout Springs, a railroad station 17 miles from Sanford, and the *feme* plaintiff, being in family way, had engaged the professional services of Dr. I. H. Lutterloh, a practicing physician at Sanford, to attend her in her approaching confinement, and he promised to come whenever he might be called for. On 2 May, 1905, about 11 p. m., the *feme* plaintiff felt the pains of labor coming on and caused the following telegram addressed to Dr. Lutterloh at Sanford to be delivered to the agent of the defendant at Spout Springs for immediate transmission, and paid the charges: "Come at once to see Mrs. Carter. John Ivey." Soon after the agent at Spout Springs informed Ivey that the message had been received by the defendant's agent at Sanford, and the plaintiffs confidently expected the physician would come. Dr. Lutterloh testified that it was a good road and had he received the telegram promptly, he would have arrived in his buggy in three hours. The telegram was received at Sanford at 11:23 p. m., but the operator there hung it on his hook and made no effort to deliver it till about 7 next morning. Dr. Lutterloh took a freight train, which was then just leaving for Spout Springs, but after suffering great agony, in this her first confinement, the *feme* plaintiff was delivered about 8 a. m., before the physician arrived. The arrival of Dr. Lutterloh had been momently and anxiously expected all during the night. On his

arrival he gave the *feme* plaintiff remedies which at once alleviated her sufferings. There is evidence not only of her great mental and physical sufferings, but also of her physical injury by reason of the absence of a physician. It was in evidence that the office hours of the defendant, at both stations, were from 7 a. m. to 7 p. m., and that Mr. Ivey waked up the operator at Spout Springs and went with him to the office, where he sent a dispatch, and he assured Ivey that the message was received at Sanford. The operator at Sanford says that he "was receiving messages for the Western Union Telegraph Company (the defendant), that he received this message over its wire from its agent at Spout Springs" without objection, and that he neither wired back nor attempted to do so, that the message could not be delivered that night. He says he had no messenger and that it would have been dangerous for him to leave the office because he was receiving dispatches controlling the movement of trains, but he also said that several trains were passing about that hour and that he went out to meet them. It was in evidence that Dr. Lutterloh's office and drug store were 150 to 200 feet from the telegraph office on the opposite side of the street, and Dr. Lutterloh testified that he was there that night till about 12 o'clock, and that his residence was 400 to 500 yards away. The operator says he knew where Dr. Lutterloh's drug store was, but that he did not know where his residence was and that he made no inquiry. It was competent for Dr. Lutterloh to testify that had he received the telegram he would have gone at once. *Bright v. Tel. Co.,* 132 N. C., 326.

There were several exceptions, but the correctness of the rulings below turns upon two points. 1. Was the operator at Sanford the agent of the defendant? 2. Was there any evidence of negligence on his part, or rather was the presumption of negligence from the failure to deliver promptly a telegram of this urgency rebutted?

The court charged the jury that "If the agent at Spout

Springs received the message and sent it to Sanford and that it was there received by the agent who occupied the office, and was using the wires and instruments of the defendant company, the agent at Sanford was the agent of the defendant and responsible for reasonable dispatch in the delivery of the message." The distinguished counsel who last addressed the court properly conceded that this charge was sustained by the ruling of this court in *Dowdy v. Telegraph Co.*, 124 N. C., 522, and rested his argument upon the second ground that there was no evidence of negligence, or if there was that the presumption was rebutted.

The telegraph company has the right to fix hours during which its offices shall be open, provided they are reasonable. We need not discuss that in this case, for conceding that 7 p. m. was a reasonable hour for closing, the defendant's agent at Spout Springs waived it so far as sending the message was concerned, by actually sending this message and receiving pay therefor. This was, it is true, not a waiver as to the receiving office. But that office waived the closing hour limitation by receiving the message without demur. Had the operator at Sanford immediately replied that he could not undertake to deliver the message till next morning, and would consider it as not received except on that condition, there would have been no contract to deliver. But the operator at Sanford did not make any objection to the receipt of the message at that hour, and says he did not make any effort to let the sending office know that the message would not be delivered. Had he done so, the sender could have sent a messenger to Sanford on horseback in less than three hours, and the physician (according to his own testimony) could have gotten there by 5 a. m., several hours before the child was born, and in time to relieve the *feme* plaintiff's intolerable sufferings and the laceration and other physical injury due to parturition without medical aid; or, it may be, that on learning that the message would not be delivered, another physician could have been obtained elsewhere.

The operator at Sanford, as soon as he received the message, should have promptly notified the sender that it would not be delivered that night. Instead of doing so, he hung it on the file for delivery next morning and testifies that he made no effort to notify the sender, nor to deliver the message. Its receipt at that hour, from the office at Spout Springs, which had been closed since 7 p. m., as well as the wording of the message, put him on notice of its urgency. "The failure to notify a sender of a telegram of the non-delivery thereof is evidence of negligence. If for any reason it cannot deliver the message it becomes its duty to so inform the sender, stating the reason therefor, so that the sender may have the opportunity of supplying the deficiency." *Cogdell v. Tel. Co.,* 135 N. C., 431, and cases there cited; *Green v. Tel. Co.,* 136 N. C., 506. This operator knew at the moment he received the message that he would not deliver it that night, and, its urgency appearing on its face, he should immediately have so notified the operator at Spout Springs before the latter left his office.

"Where a message appears on its face to be urgent, the fact that it is offered for transmission after office hours will be no defense to the company if the agent accepts it without reserve." 27 A. & E. Enc., 1038, note 2, and cases there cited. In the case at bar, the defendant's operator at Spout Springs not only took the message for immediate transmission and delivery, but informed the sender that it had been received at Sanford. "Where a telegraph company undertakes to deliver a telegram at other than its office hours it thereby waives the benefit of its office hours." *Bright v. Tel. Co.,* 132 N. C., 317. "A rule merely made without notice to those who are to be affected by it and without exaction or conformity to it, and which is not in fact observed by the company itself, cannot, as a protection against liability, be laid away in the secret consciousness of the agents of the company, unknown and unobserved until the occasion arises to apply it

on account of liability incurred by failure to deliver." *Tel. Co. v. Robinson,* 13 Pickell, 97 Tenn., 638, cited in *Hendricks v. Tel. Co.,* 126 N. C., 311. "The company would be bound at its peril to ascertain and disclose its inability to deliver a message, where on its face it showed the importance of speedy transmission." *Tel. Co. v. Harding,* 103 Ind., 505.

The receipt of the message without demur or objection was an implied agreement to deliver it with reasonable dispatch. All the authorities concur that this duty arises from the receipt of the dispatch and that the failure to deliver within a reasonable time raises the presumption of negligence, and the burden is upon the telegraph company to rebut this presumption. *Cogdell v. Tel. Co.,* 135 N. C., and numerous cases cited, p. 434.

The operator at Sanford testified that he was busy receiving messages as to the running of the trains and that it would have been unsafe for him to go out to deliver a message. If so, he should have so notified the sending office when it was received and not have left the sender under the delusion that the message would be promptly deliverd. But he also testified that he had to go out to meet passing trains, of which two or three came between 11 and 12 at night, and the plaintiffs argue that the mail carrier, hotel porters and others meet such trains and that within any reasonable diligence the operator could have had this message delivered at Dr. Lutterloh's office, 150 to 200 feet away across the street, and the doctor testified that he was there that night until 12 o'clock; and, indeed, the agent, it may be, could have procured a messenger to take the message to the doctor's house if it had been necessary. But he showed no effort to do either; he merely hung the message on the hook "till next morning," he says. In the meantime, the woman was suffering untold agonies, having relied upon the agent using reasonable diligence to deliver her telegram.

The burden being upon the defendant to rebut the pre-

sumption of negligence arising from the receipt of the message by the operator, at Sanford, without any objection on account of its being after office hours, and the delayed delivery, the judge could not have directed a verdict in favor of the defendant. *Boutten v. Railroad,* 128 N. C., 340. The court charged the jury: "The company is under no obligation to keep messengers in its offices for the purpose of receiving and delivering messages after office hours were closed. But if after the time the message was received at Sanford, the defendant's agent there could reasonably and practically have delivered that message, it was his duty to do so, whether he could have done so through a messenger boy or whether he could have employed some other person to communicate with the sendee, Dr. Lutterloh, and let him know that the message was there requiring his immediate attendance upon the plaintiff. * * * Now, when you take facts and circumstances into consideration here, was this message delivered with reasonable diligence, and the facts which you find from the evidence to exist at Sanford, do they exculpate or excuse the defendant from making delivery? If you find they do not, and the message was not delivered with reasonable diligence, you should agree to find the first issue 'yes,' that is, was the defendant negligent in the delivery of the telegram to Dr. Lutterloh? and if you find from the evidence that the office was closed, that it was after office hours, that the force was discharged that attended upon the office, and that there was no one by whom the message could have been delivered at the command of the defendant or its agent, and if you should further find that at the time he received the message that the duties which he was required to perform were such that he could not leave the office without endangering the life of those who might be traveling over the trains on the road, then I charge you it was not negligence for him to wait until he could get some person by whom he could send the message. It is a question for

you to say how you will find the facts to be in regard to that matter."

This was a matter for the jury and was fairly and justly presented to them by the court. The jury found from the surrounding circumstances, "which from the evidence the jury found to exist at Sanford," that "the defendant's agent at Sanford could reasonably and practically have delivered the message" that night. They possibly based this upon the evidence (which was not all sent up) or a knowledge of common usage, their everyday knowledge, that when the two or three passenger trains were stopped and the agent went out to meet them, as he testified he did, that the mail carrier, the hotel runners and others would be at the train and that the message or notice that there was a message could have been gotten across the street 150 to 200 feet away to the office of Dr. Lutterloh, where the doctor said he was that night till 12 o'clock. At least the burden was upon the defendant to show that some effort was made to deliver the telegram after receiving it at Sanford without objection, and that no one was at the trains whom he could get to deliver the message. On the contrary the defendant's agent testified that he hung it on the hook and made no effort whatever to deliver it till about 7 o'clock next morning. The jury found that upon the circumstances in evidence the presumption of negligence arising from the failure to deliver the telegram, for nearly eight hours after its receipt, was not rebutted. The agent was not compelled to receive the message after office hours, but he did so and without objection, and then made no effort to deliver it for nearly eight hours. Suppose he had given the message to the company's messenger and the messenger had made no effort to deliver it for nearly eight hours, would the presumption of negligence have been rebutted by the bare fact that he received the message after office hours?

No Error.

CONNOR, J., concurring: I concur in the conclusion reached in this case, with much hesitation, and only in deference to the controlling authorities cited in the opinion. If an open question I should hold that when a telegram is received by an operator after office hours, as a matter of accommodation, the sender would be fixed with notice that the undertaking to deliver the message was not in the discharge of a public duty, but was a special contract to be interpreted in the light of the time, the surrounding conditions, etc.; that the measure of duty would be the exercise of ordinary care in delivering the message carrying no presumption of negligence in failing to make prompt delivery—the burden of proof being upon the plaintiff to show negligence. The courts, however, seem to have decided that the acceptance of the message, after office hours, is a waiver of such hours, imposing the same measure of duty and raising the same presumption as if received during office hours. The rule, in my opinion, is a very harsh one. The basis upon which the rigid rule and presumption is justified, when messages are sent during office hours, does not obtain. If we could accept the uncontradicted statement of the operator, I could see no negligence in his conduct, but as there is a presumption of negligence, the question whether it was rebutted was for the jury and we are bound by their verdict. I cannot assent to the proposition that he was required to, or would have been justified in, picking up a hotel porter, or some straggler around a depot at midnight to deliver the message. To have done so would have been negligence. I think that he was negligent in that he did not promptly, upon receipt of a message showing the urgent necessity for immediate delivery, notify the sending office that he could not deliver it. He should not have taken the message. This, however, is not the cause of action set forth. The case is a hard one. The defendant may in the future protect itself by an absolute refusal to take a message after office hours. This would seem

to be the only way open to it in such cases. Whether, those who are often in sore need of its extraordinary service will be compensated for the loss of it by such recoveries as this, it is not my province or duty to discuss. The law has been declared and I may not change it because of hard cases—which are said to be "the quicksands of the law."

WALKER, J., concurs in the concurring opinion.

BROWN, J., concurs in the concurring opinion, as well as the opinion of the court.