## GIVEN *v.* WESTERN UNION TEL. CO.[1]

*(Circuit Court, S. D. Iowa.   June 11, 1885.)*

1. TELEGRAPH COMPANY—DELIVERY OF MESSAGE—DIRECTIONS TO DELIVER AT PARTICULAR PLACE.

    The proper mode of directing a telegraph company to deliver at a particular place all telegrams directed to a party, is to leave with the company or send to it at its office directions in writing; and a mere verbal instruction or request to a messenger of the company at some other place than its office, cannot be relied on to fix any legal obligation on the company for a failure to so deliver a message.

2. SAME—ABSENCE OF PARTY ADDRESSED FROM CITY—DUTY OF COMPANY.

    Where a telegraph company telephones to the place of business of a party to whom a telegram is directed, and, learning that he is out of the city and will be absent for several days, causes said telegram to be delivered at the residence of the party, to his wife, and then informs the sender of the message of the absence of the party from the city, it has performed its duty.

3. SAME—DUTY TO INFORM EMPLOYES OF TIME OF CLOSING OTHER OFFICES.

    It is not the duty of a telegraph company, with offices scattered all over the United States, to keep the employes of every one of its offices in the country, or in any one state, informed of the time when every other office closes for the night.

4. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

    On examination of the evidence in this case, *held*, that negligence on the part of the telegraph company is not shown, and that any loss that resulted to plaintiff from a failure to receive the message in time to act thereon, was caused by the contributory negligence of plaintiff in not informing his wife where to send messages received during his absence from home, or by her failure to act promptly in the matter.

Tort for a Failure to Transmit and deliver a telegraphic message seasonably.

The plaintiff claimed a recovery of $10,000 upon the following state of facts:

On the twenty-fifth day of February, 1884, one R. W. Patterson filed in the office of the defendant in Chicago, at 3:45 P. M., the following message:

"*To Welker Given, Des Moines, Iowa:* Will you consider a proposition to become editor in chief of an important paper at Denver; salary three to four thousand, and stock interest?   If so, come to Chicago to-night and see the proprietor to-morrow   It is a fine prospect.

[Signed]                              "R. W. PATTERSON."

This message was sent to Des Moines at 3:55 P. M. and was there received at 4 P. M.   The plaintiff, to whom the message was addressed,

Reported by Robertson Howard, Esq., of the St. Paul bar.

was the private secretary of the governor of Iowa; and defendant's manager, upon receipt thereof, telephoned to the governor's office, stating that a message had been received for plaintiff. Reply was made that he was out of town. At 4:14 P. M. a message was sent to Patterson informing him that Given was out of town, which was delivered to Patterson at 5 P. M. The original message, signed by Patterson, was delivered to plaintiff's wife at 4:30 P. M. At 7:09 P. M. the following message was filed in the office of defendant, at Des Moines, by plaintiff's father:

"*To Welker Given, Some Hotel, Marshalltown, Iowa:* Have important dispatch for you. Where shall I send it?
[Signed] "JOSIAH GIVEN."

This message was received at Marshalltown at 7:15 P. M., and receipted for by plaintiff at 7:20. Thereupon the following message was filed in defendant's office, at Marshalltown, at 7:40 P. M.:

"*To Josiah Given, Des Moines, Iowa:* To Tremont House, Marshalltown.
[Signed] "WELKER GIVEN."

This message was received at the Des Moines office at 8 P. M. Plaintiff alleged that at about 8:15 P.M. his father, Josiah Given, called at defendant's office in Des Moines and received the last dispatch named, and receipted therefor; that he called for a blank upon which to write a message, and was offered by defendant's clerk a night-rate blank; that the clerk was informed by Josiah Given that the message he was about to send was a very important one, and that it was essential it should be delivered that night; that he wished, therefore, to send it at full rate; and that, after some talk between him and the clerk, the original message received from R. W. Patterson, in the afternoon, with the change of address, was refiled, and full rate paid therefor. This message was sent to the relay office at Chicago, where it remained during the night, and was transmitted to Marshalltown the following morning, being received there at 8:20 A. M., and delivered to and receipted for by plaintiff at 8:45 A. M.

The plaintiff further alleged that nearly two years previous, when he became private secretary of the governor, he had given instructions to one of defendant's messengers that all messages addressed to him, and received at defendant's office during business hours, should be delivered at the governor's office. The plaintiff alleged the negligence of defendant—*First,* in failing to deliver the original message at his place of business; *second,* in failing to transmit with diligence the message, when refiled by Josiah Given, to Marshalltown, and also in failing to notify defendant that the office at Marshalltown was closed for the night; *third,* in failing to keep the office at Marshalltown open, as plaintiff had requested the operator to do, until the receipt of the message; *fourth,* in sending the message to R. W. Patterson, informing him that plaintiff was out of town.

Defendant denied generally all the allegations of the plaintiff's petition, pleaded the contributory negligence of plaintiff, and a contract

with plaintiff whereby it was exempted from liability for delay in the delivery of unrepeated messages. The defendant insisted on the trial that, as a matter of law, the damages claimed were too remote.

It appeared, from the evidence that if the message addressed by Josiah Given to plaintiff at Marshalltown had been received there before 2:45 A. M. on the twenty-sixth of February, the plaintiff could have taken the train thence to Chicago, where he would have arrived at 2 P. M. that day. The original dispatch was sent by Patterson at the request of T. C. Henry, who was president of the Denver Tribune Publishing Company, of Denver, Colorado. He had seen an editorial in the Chicago *Tribune* which had attracted his attention, and made inquiry of Joseph Medill and R. W. Patterson, editors of that paper, as to who was the writer thereof, and was informed that it was plaintiff. He thereupon requested that the dispatch aforesaid should be sent. Henry was informed by Patterson on the morning of the twenty-sixth of February of the receipt of the message stating that Given was out of town, and left for home in the afternoon. He never communicated with plaintiff subsequently upon the subject of the message, and employed another editor.

Testimony was offered by the defendant denying the receipt of any instructions from plaintiff with respect to the delivery of his messages at his office. Testimony was also introduced tending to show that the time when the message was filed by Josiah Given for Welker Given, Marshalltown, was 9 P. M., and not 8:15, P. M., as claimed by plaintiff; and this testimony included the office record kept by defendant, the statement of the receiving clerk, and the date of filing upon the message itself. It appeared that the usual hour of closing of the Marshalltown office was 9 P. M., and the opening hour was 8 A. M., and that it was closed and opened at these hours on the day in question. Testimony was also introduced tending to show a want of authority in Henry to employ a managing editor, and other matters with respect to the financial condition of Henry and the Denver Tribune Publishing Company.

The trial was to the court without a jury; Mr. Justice MILLER and Judge LOVE sitting in the case.

*Phillips & Day,* for plaintiff.

*Runnells & Walker,* for defendants.

MILLER, Justice. The foundation of plaintiff's claim is that by the negligence of the defendants in conveying and delivering these messages he lost employment as editor of the Denver *Tribune,* which he would otherwise have secured, and that as another man did by reason of this negligence get that employment, for which he received from $4,000 to $5,000 for a period of time during which plaintiff only received a much smaller sum, he is entitled to recover the difference in this action.

The first subject of inquiry, therefore, is the existence of such negligence as would make defendant liable for any damages. The first

act of negligence charged to the defendant has relation to the deliv-
ery at Des Moines of the message from Patterson to plaintiff. It is
said that the duty of the company was, immediately upon the receipt
of the telegram, to deliver it at the office of the governor, which was
the usual business place of plaintiff; and to make this duty clearer,
it is said that instructions were given by plaintiff to the company
that all messages for him should be delivered there. The testimony
does not sustain this assertion. The person to whom said directions
should have been delivered says he received no such instruction, and
other clerks and employes in the office of the company say the same
thing. The plaintiff, who gives the only testimony on this subject,
says that he at some time, not very definitely fixed, sent word by one
of the messengers to have all dispatches for him sent to the office of
the governor's private secretary, which he was. But this was merely a
verbal instruction or request to the messenger, which he may have con-
strued as given for his own government, and which, if intended to gov-
ern the actions of the company, was not delivered to the proper person.
The duty of the messenger was to deliver messages from the tele-
graph office, not to it. For the latter purpose he was the agent of the
plaintiff and not the defendant. Besides, the proper mode of direct-
ing the company on that subject is so obviously to have notified it or
sent to it directions in writing, that a casual statement to a messen-
ger, at some other place than the office, cannot be relied on to fix upon
that company any legal obligation.

It is next argued that the previous course of business between the
parties made it the duty of the company to send the dispatch to that
office; and, in support of this, the evidence of plaintiff shows that, as
private secretary of the governor, he had been in the habit of receiv-
ing telegraphic messages from that company at that place, and no-
where else, and that there he received also telegrams of his own on
private business. But it is not stated that any such private messages
had been there delivered and received for him when he was absent
from the city, or that the company had any reason to suppose that in
such case he wished them to be delivered there. In the instance
now in question, the defendant communicated with the governor's of-
fice by telephone, and received information, which was true, that plain-
tiff was out of the city, and would be absent two days. The men in
charge of the telegraph office sent the message to the residence of plain-
tiff, where it was received by his wife in due time, and telegraphed to
Patterson, the sender of the message, the information of plaintiff's
absence from the city. For both these acts the defendant is blamed.
In both of them we think the defendant did its duty. Its first obliga-
tion was to the sender of the message. It was proper he should be
informed of the absence from the city of the party to whom it was
sent, as it asked him to come to Chicago that night.

Without elaborating the matter we are of opinion, that when in-
formed that plaintiff was out of the city, and would be for two days,

the company did the precise thing which it ought to have done, namely, delivered the message to his wife at his residence, and thus enable her, the most likely of all persons in the world to know where her husband was, to send the message to him immediately. If she did not know where he was, it was the fault, if fault was in any one, of the plaintiff, who had neglected to inform her. The dispatch remained in her hands from 4:30 P. M. until 7:09 P. M., and during this time the golden opportunity was lost. We think this was contributory negligence sufficient to defeat the action. For, even if, after this delay, when Josiah Given, father of plaintiff, undertook, at 7 o'clock P. M., to communicate with plaintiff, he had transmitted the original message, instead of an inquiry as to where it should be sent, the former would have been received in time to enable him to go to Chicago that night. It is not easy to see, when all parties were aware of the necessity of such prompt action, why the original message was not sent, instead of an inquiry to the same person as to where it should go. The delay thus occasioned defeated the only other chance for his going to Chicago that night.

But it is urged that there was negligence in sending the message to Marshalltown, when the father of plaintiff finally offered this original message for transmission. The office in Marshalltown, by custom or by orders from its superiors, closed at 9 o'clock P. M. Defendant produces the record of the dates of receiving, filing, and delivering messages, and the evidence of the receiving clerk, which show that this message was filed in the office at 9 o'clock, and therefore too late for transmission that night to Marshalltown. Also the date of its filing on the message itself, with proof that these entries are made truthfully, and in due course of business.

Mr. Josiah Given testified, on the other hand, that he was in the office at 8:15 P. M., and there received the dispatch directing him to send the original message to plaintiff at Tremont House, Marshalltown. He says this, because he looked at his watch when he left the court-house to go to the telegraph office. He further testifies that, when he received his dispatch from his son, he began to repeat the message from Patterson, writing on a blank which had been given to him, but which he discovered was for a night message. He said he must have a day-message blank, as it was important, and must be sent at once. It was then suggested that the message might be repeated from the one already in the office, and this was determined on. How long a time all this occupied, with the walk from the court-house, the receipt and examination of the message from plaintiff to his father to forward the dispatch to the Tremont House, the change of blanks, and the conversation, no one can tell. As the *onus* of proving the blame rests on the plaintiff, we cannot say that any unnecessary delay by the office prior to 9 o'clock is established.

It is said that the object might have been accomplished if those in charge of the office at Des Moines had known that the office at Mar-

shalltown closed its business at 9 o'clock, and had communicated that fact to Josiah Given. It was shown that they did not know this, and that they were not furnished with means of knowing when the offices of the company closed for the night at other places than Des Moines. The want of this information is assigned for negligence. But we do not see any sufficient reason for believing that if Mr. Josiah Given had been told, when he offered his last message, that the office at Marshalltown was closed for the night, that he could have provided any other means of repairing the evil, and so the information, if communicated to him, would have done no good. Nor do we see that it is the duty of the Western Union Telegraph Company to keep the employes of every one of its offices in the United States informed of the time when every other office closes for the night. The immense number of these offices all over the United States, the frequent changes among them as to time of closing, and the prodigious volume of a written book on this subject, seem to make this onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers, for neglect of which it must be held liable for damages. There is no more obligation to do this in regard to offices in the same state than those four thousand miles away, for the communication is between them all, and of equal importance.

The question of the remoteness of the injury, and want of any satisfactory measure of damages, has been ably discussed, and is one of much interest; but as we are of opinion that no such negligence is shown as to render defendant liable at all, we forbear to consider that question, and render judgment for the defendan.