ROBERT CATES v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 23 December, 1909.)

1. Telegraph—Office Hours—Notification of Employees.

A telegraph company. may observe reasonable office hours for the transaction of its business in the transmission and delivery of telegrams, and it is under no obligation to keep its employees in each of its offices informed of the time when every other office is closed for the night.

2. Telegraph—Office Hours—Message Subject to Delay.

A message received at 8:25 P. M. by an agent of the defendant telegraph company "subject to delay," the agent informing the sender of the message at the time that it could be delivered during the night, provided that the defendant had a joint office with the railroad at the place of destination, but not if the office was a separate·one, imposes no duty upon the defendant to deliver the message that night if the office at the destination was in fact not a joint office.

3. Same—Instructions.

When there is evidence tending to show that the defendant telegraph company received a death message for transmission at 8:25 P. M.. and that, at the time, its agent informed the sender that the message would only be delivered if the defendant had a joint office with the railroad at the place of destination, and not if it had a separate office there; that in fact the office was a separate one, at which the hours were from 8 A. M. to 8 P. M., and that the injury complained of arose from the plaintiff's not being able to catch a train leaving at 8 A. M., owing to the delivery of the message to the plaintiff at 9:40 A. M. at his place of business after the messenger had carried it to his residence a mile and a quarter from defendants' office, the defendant is entitled to an instruction that it was under no obligation to deliver the message except between the hours of 8 A. M. and 8 P. M., and if the jury find the office hours at the place of destination to be from 8 A. M. to 8 P. M., and it delivered the message a reasonable time after 8 A. M. of the following day, to answer the issue as to negligence for the defendant.

4. Telegraph—Office Hours—Destination—Receiving Message for Transmission—Agreement Implied—Negligence.

In order to hold a telegraph company liable for damages for not delivering a message at its place of destination when the office there had been closed for the night in the observance of reasonable office hours, it must be shown that defendant's agent, who received the message for transmission and delivery, by an agreement with the sender, expressed or implied, undertook that the message would be delivered that night, and the mere fact that the message was received after the office at the destination had been thus closed for the night is not evidence of negligence *per se* on the defendant's part. *Carter v. Telegraph Co.*, 141 N. C., 374; *Suttle v. Telegraph Co.*, 148 N. C., 480, cited, distinguished

151—32

and approved. In this case the "mental-anguish" doctrine is commented upon and approved by WALKER, J., for the Court.

### 5. Appeal and Error—Weight of Evidence—Discretion of Court.

It is within the sound discretion of the lower court to determine whether the verdict of the jury should stand as being against the weight of the evidence, and its decision is not reviewable.

APPEAL by defendant from *Long, J.,* May Term, 1909, of ALAMANCE.

This action was brought to recover damages for an alleged negligent delay in delivering a telegram.

The material facts are as follows:

On 13 March, 1907, at 8:25 o'clock P. M., Tignall Lashley, a brother-in-law of the plaintiff, filed with the defendant's operator at Haw River, N. C., the following telegram, addressed to the plaintiff, at his home in High Point, N. C.: "Jim Cates' daughter dead; wants you and all to come to-morrow." Assuming, for the sake of argument, that the message sufficiently discloses its importance to the plaintiff, it will be observed that it does not state at what time Robert Cates and the others would be expected to arrive at Haw River. The hour of the funeral is not given. But, waiving this aside as irrelevant to the decision of the case upon its merits, we will proceed to state the other facts. The message was written by S. A. Vest, the operator at Haw River, for Lashley, the sender. S. A. Vest testified that he told Lashley, at the time of writing the message for him, that it could be delivered during the night, provided the defendant had a joint office with the railroad company at High Point, but not if its office was a separate one, and that he wrote on the message, "Sent subject to delay"; and all of the evidence tended to show that the defendant's office at High Point was separate from the office of the railroad company. There was no direct communication by wire between Haw River and High Point, but the message had to be sent by way of Charlotte, N. C., or Richmond, Va. The operator at Haw River tried to connect with the office at Charlotte, but the operators had left that office, though it was apparently open for the transaction of business. He then tried the office at Richmond, Va. There would have been no difference in the time of the transmission of the message through either office. The message was actually received at the High Point office about 8 o'clock A. M. on 14 March. When received, it had to be written out by the operator, copied and entered on the delivery sheet. The messenger boy started with the message for the purpose of delivery at 8:30 o'clock A. M. on the 14th,

and it was delivered at 9 o'clock to plaintiff's wife, at 69 Smith Street, the home of the plaintiff, which is about a mile and a quarter from defendant's office in High Point. She opened it, read it and sent it to her husband, who was not then at home, but at the shop of the Globe Home Furniture Company, where he was employed. He received it about 9:40 o'clock A. M. A train of the Southern Railway Company passed Haw River for High Point, and stations beyond, at about 7 o'clock A. M., and if plaintiff had received the message during the night or in the early part of the morning, in time to have taken that train, he and his family would have reached High Point in time to attend the funeral.

The defendant requested the court to give the following instructions:

"Telegraph companies have a right to fix reasonable office hours for the conduct of their business; and if you believe the evidence, you will find that the hours from 8 A. M. to 8 P. M. were the office hours in effect at High Point, N. C., on the date of the message in controversy, and that such hours were reasonable."

The court responded to this instruction as follows:

"The court does not give you the instruction in the language asked, but modifies it by leaving it to the jury to find the facts, so that instead of using the words 'if the jury *believe* the evidence,' the court modifies the instruction by saying, 'if the jury, from the evidence, finds the facts to be as stated in the instruction.'

"The defendant was under no obligation to deliver the message in question, except between the hours of 8 A. M. and 8 P. M.; and if you find that those were the office hours at High Point at that time, and that it delivered the message in question within a reasonable time after 8 A. M. on the morning of 14 March, 1907, then you will answer the first issue 'No.'

"The court gives you the instruction, adding, however, the following: 'unless you find that the defendant company waived the benefit of its office hours by the acts and conduct of its agent at Haw River at the time this message was accepted by him for transmission.'

"The defendant also asks me to give you the eighth and ninth instructions, as follows: 'If the jury shall find from the evidence in this case that the first train which left High Point, and on which the plaintiff could go to Haw River after 8 o'clock A. M. on 14 March, 1907, was caught by the plaintiff, then you will answer the first issue "No." If the jury shall find from the

evidence in this case that the first train which left High Point, and on which plaintiff could go to Haw River, after 8 o'clock A. M. on 14 March, 1907, was caught by the plaintiff, then you will answer the second issue "Nothing."'

"These instructions are given, unless you find, under the instructions given you, that the message could have been and should have been delivered by the defendant to the plaintiff, in the exercise of due care and diligence on its part, in time for the plaintiff to have come from High Point to Haw River on the night of the 13th or on an earlier train than that referred to in the instructions on the morning of the 14th."

The jury rendered a verdict for the plaintiff upon the issue as to negligence, and assessed his damages at $225. Judgment was entered upon the verdict, and, the defendant having duly excepted and assigned errors, appealed to this Court.

Plaintiff not represented in this Court.
*King & Kimball* and *T. S. Beall* for defendant.

WALKER, J., after stating the case: There is no merit in this case, and it should not have been submitted to the jury in the manner it was. The defendant, by the undisputed testimony, did everything within its power to deliver the message in question. It acted with due diligence and dispatch; and if the plaintiff has sustained any damages, the cause from which they flowed must be imputed to his own misfortune and not to the defendant's fault.

It would serve no practical purpose to reproduce the instructions of the court here, but it may be said generally that the case was tried upon the wrong principle, and the error pervades the modifications of the special instructions as well as the charge itself. It seems to have been supposed that we had decided in *Carter v. Telegraph Co.,* 141 N. C., 374, that the receipt of a message at night for transmission, not within the established office hours, implies an undertaking or agreement on the part of the telegraph company to deliver it, as if it had been received within its regular office hours, or under an express or implied contract to deliver with diligence and dispatch, and without any regard to office hours; whereas we did not so decide, as will appear from the language of the Chief Justice, who wrote the opinion for the Court in that case. "The telegraph company," he said, "has the right to fix hours during which its offices shall be open, provided they are reasonable. We need not discuss that in this case, for, conceding that 7 P. M. was a reasonable hour

for closing the defendant's office at Spout Springs, it waived it, so far as sending the message was concerned, by actually sending this message and receiving pay therefor. This was, it is true, not a waiver as to the receiving office. But that office waived the closing-hour limitation by receiving the message without demur. Had the operator at Sanford immediately replied that he could not undertake to deliver the message until next morning, and would consider it as not received, except on that condition, there would have been no contract to deliver. But the operator at Sanford did not make any objection to the receipt of the message at that hour, and says he did not make any effort to let the sending office know that it would not be delivered." The two cases differ essentially in this: that in this case the operator at High Point did not receive the message until 8 o'clock the next morning.

It cannot be rightly contended that a telegraph company may not establish reasonable hours for receiving and delivering telegrams, and that it is liable for a failure to receive, send and deliver even an important telegram which is tendered to it within such hours. It has been thoroughly settled by many courts and text writers that such a company may adopt reasonable office hours for the transaction of its business in the transmission and delivery of telegrams, and it is under no obligation to keep its employees in each of its offices informed of the time when every other office closes for the night, or to deliver a message received after the closing of the office. The authorities to this effect are most abundant. We cite only a few of them. *Sweet v. Telegraph Co.,* 22 R. I., 344. In that case it appeared that a newspaper correspondent, who, it seems, was also a telegrapher, but not employed by the company, received the message sent, and placed it on the filing hook for the operator who was employed by the defendant, but who had left the office for the night. The message was delivered the next day at 9:25 A. M. With reference to this state of facts, the learned Chief Justice, for the Court, stated the rule of law applicable to the case, and we quote liberally from his opinion, because what he says had occurred to us as being not only the correct but the just rule of the law: "The controlling question is whether the receipt of the message for transmission after the terminal office had closed was an act of negligence. This depends upon whether the receiving agent was bound to know the time of closing in the terminal office. The decisions on this point are practically unanimous that a receiving agent is not so bound, for the reason that, in view of the great number of telegraph offices all over the country, and

their variant conditions—some large and requiring constant service, others small and with infrequent calls—a requirement that every agent should know the hours of every office would be unreasonable, if not impossible. To hold a company to such a duty would either require a uniform time of closing in all offices which are not constantly open, or a directory of all such offices, with their various hours at different seasons of the year. The former alternative would compel a service at small stations far beyond their needs, and the latter, as *Mr. Justice Miller* said, in *Given v. Telegraph Co.,* 24 Fed., 119, would be 'onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers, for neglect of which it must be held liable to damages.' This rule, stated in Croswell Law Relating to Electricity, Telegraphs, etc., sec. 421, notes 1 and 2, and 25 Am. & Eng. Enc. Law, p. 785, n. g., is supported by the cases cited."

"The plaintiff relies on *Telegraph Co. v. Broesche,* 72 Tex., 654 (1889), which went to the extent of holding that the fact that the company's office at Burton was closed at the time its agents at Austin received the message for transmission, was no defense for failing to transmit and deliver the message."

"But in *Telegraph Co. v. Neel,* 86 Tex., 368 (1894), the same question came again before the court, and it was held that the company should have the right to establish reasonable hours within which their business is to be transacted, adding this very sensible conclusion: 'It seems to us that the reasonableness of a regulation as to hours of business is sufficiently obvious to suggest to the sender of a message, who desires its delivery at an unusually early hour for business, the propriety of making inquiry before he enters into the contract.' This decision was affirmed in *Telegraph Co. v. May,* 27 S. W. Rep., 760, and in *Telegraph Co. v. Wingate,* 6 Tex. Civ. App., 394 (1894) ; so that, we cannot regard *Telegraph Co. v. Broesche, supra,* as stating the law of Texas at the present time.

"For the reason stated, we are of opinion that the receipt of the telegram in Boston without knowledge of the receiving operator or notice to the sender that the office at Pawtucket had closed for regular business was not an act of negligence by the defendant. It is also clear that the defendant company is not made liable by the fact that it was received by one not in its employ and not its agent for that purpose, who was allowed to remain in the office and to use the wires of the company for other purposes."

"The plaintiff argues that, as the addressee of the message, he has a right of action different from that of a sender, because he

is not a party to the contract, and hence not bound by its stipulations. However this may be, the plaintiff has no cause of action, except that of the defendant's negligence. Having found that the defendant was not guilty of negligence, there is no ground for action in either case." See, also, *Given v. Telegraph Co.,* 24 Fed. Rep., 119; *Telegraph Co. v. Harding,* 103 Ind., 505 (a very instructive case); Jones on Telegraphs and Telephones, secs. 349 and 351, and cases cited in the notes. This is a most reasonable rule of law, and the one which the plaintiff seeks to apply would cause great injustice and oppression. There are a vast number of offices of each company at different places in this country, and it would most assuredly be exacting too much from these companies to require them to keep their offices open at all hours of the day and night. There is no other employment in which the law requires so much from the proprietors. If the cupidity of these companies suggests such a course, they may have day and night employees and transact their business continuously and even incessantly, but the law requires only a reasonable service from them, and will not compel them to serve the public day and night."

In the case of *Telegraph Co. v. Harding, supra,* the principle is sustained by cogent reasoning: "In this view, it seems clear to us, contrary to our first impression, that the penalty is not incurred unless there is a failure to receive and transmit during the usual office hours, both at the point where the message was received and that to which it is to be transmitted. To hold otherwise would involve the telegraph company in the necessity of having its offices open for the reception and delivery of messages at all points and an equal length of time. If the requirements of its business at one point made it necessary to keep its office open twenty-four hours in the day, its usual office hours at such point would be continuous. It would, according to the instruction contended for, be compelled to receive messages during usual office hours at that point. If it must transmit them, without delay, to every other point to which they may be directed, or incur the statutory penalty, irrespective of the requirements of its business at other points, then of necessity it must have no offices at all at points where it cannot have them open continuously. We do not think this was the purpose of the statute." The case of *Given v. Telegraph Co., supra,* would seem to be directly in point. The opinion in the case was delivered by *Circuit Justice Miller,* as great a lawyer as ever sat in the Supreme Court of the United States, not counting *Chief Justices Marshall* and *Taney.* This learned jurist said: "We do not see

that it is the duty of the Western Union Telegraph Company to keep the employees of every one of its offices in the United States informed of the time when every other office closes for the night. The immense number of these offices all over the United States, the frequent changes among them as to time of closing, and the prodigious volume of a written book on this subject seem to make this onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers, for neglect of which it must be held liable for damages. There is no more obligation to do this in regard to offices in the same State than those four thousand miles away, for the communication is between them all, and of equal importance." To the same effect is *Stevenson v. Telegraph Co.*, 16 N. C. Q. B., 530. So, in *Telegraph Co. v. Cotton Co.*, 94 Ga., 444, it is said: "In the absence of a special contract to transmit immediately, or of an express request for information, it is not obligatory upon a telegraph company to acquaint a customer with the office hours of the company at a point to which the message delivered by him for transmission is directed." Some of the authorities sustaining the rule in its varying application to the facts of each particular case are as follows: *Telegraph Co. v. May*, 27 S. W., 760; *Telegraph Co. v. Wingate*, 25 S. W., 439; *Telegraph Co. v. Neel*, 25 S. W., 15; Jones on Telegraph and Telephone Companies, pp. 330, 331 and 347; *Starkey v. Telegraph Co.*, 115 S. W., 853; *Telegraph Co. v. Ayers*, 93 S. W., 199; *Telegraph Co. v. Scott*, 87 S. W., 289; *Telegraph Co. v. Henderson*, 7 So. Rep. (Ala.), 419; 1 Joyce on Elec. Law, sec. 488; *Gibson v. Telegraph Co.*, 53 S. W., 712; *Davis v. Telegraph Co.*, 66 S. W., 317; *Telegraph Co. v. Crider*, 54 S. W., 963; *Telegraph Co. v. Steinburger*, 54 S. W. (Ky.), 829; 2 Joyce on Electricity, sec. 809b; *Telegraph Co. v. Van Cleave*, 54 S. W., 827; *Telegraph Co. v. Love-Banks Co.*, 83 S. W., 949, 950; 1 Joyce Electric Law, sec. 488; 27 Am. & Eng. Enc. (2d Ed.), 1037; 25 Am. & Eng. Enc. (1st Ed.), 785; *Telegraph Co. v. Crider*, 54 S. W., 963. We would not be in alignment with the controlling authorities and decisions in this country or England if we should hold that the mere receipt, not within office hours, of a telegram for transmission, which could not be received at the other end of the line, because the office there had closed, in accordance with the usual and reasonable office hours established by the company, would still impose a liability upon it. Such a holding would be contrary to every principle of reason and justice, and we cannot assent to it.

The authorities cited by us, and the reasons given for our decision, are not at all in conflict with *Carter v. Telegraph Co.*,

*supra,* or with *Suttle v. Telegraph Co.,* 148 N. C., 480. In the case first cited, the Court substantially asserts the very rule which we have said should govern this case. There the operator at Sanford received the message over the line of the defendant from the operator at Spout Springs, without notifying the transmitting operator that he could not deliver it that night. He, by the clearest implication, undertook and agreed to use due diligence in delivering the message. He was informed by the telegram that it was sent in behalf of a woman who, it appeared, was then in the pains and throes of labor, and who required the immediate presence and medical attention of her physician. He was at least informed by the message that a woman, one of his patients, required his immediate services. His silence, after receiving such an important and urgent message, must be construed as an agreement on his part, in behalf of his principal, the telegraph company, to deliver the message with due diligence that very night. Common humanity and the general conduct of persons under such circumstances require us inevitably to draw such an inference. His silence was calculated to mislead the sender, who could have procured the early attendance of her physician at her bedside by other means if she had known of the true situation. That decision was right, and is in perfect accord with our conclusion in this case. The very able and learned judge who presided at the trial in this case misconceived its scope, and by reason thereof charged the jury to the prejudice of the defendant. Nor is there any conflict between what we now decide and the case of *Suttle v. Telegraph Co.,* 148 N. C., 480. Why, the case directly and emphatically sustains our present ruling! There we held that the defendant, by its operator, who was its agent, with authority to make the contract, received the message at Raleigh and expressly agreed to deliver the same at a time which was not within its prescribed office hours, and, having so agreed, it was its legal duty to do so. Who will say that it was not? Besides, it appeared from the contents of the message that quick service was expected, and the message was filed for transmission within office hours, and the defendant had ample time within which to transmit and deliver it before the closing hour of the defendant's office at Smithfield, the home of the plaintiff and his wife, the sendee. We held, and now hold, that *Judge Long,* who presided at the trial of this and that case, ruled correctly upon every controverted question in that case, and affirmed the judgment. That case has no special bearing upon this case, except in declaring the general principles applicable to contracts between a telegraph company and its patrons, and

as impliedly holding that if the office at the terminal point (Smithfield) had been closed when, under the reasonable rules and regulations of the telegraph company, the message should have reached that office, if the company had exercised reasonable diligence, it would not have been liable, without an express or clearly implied agreement on the part of the company that it would deliver the message at all events, or, without regard to its rules, that even. But it appeared in the report of that case that it had full time to comply with its contract within its office hours, which had been established both at the initial and terminal points.

Our conclusion is that the court erred in submitting this case to the jury with improper instructions upon the law as applicable to the special facts, and therefore the defendant is entitled to another jury.

Whether a verdict, upon the evidence in this case, in favor of the plaintiff should be allowed by the court below to stand is a question which relates to the weight of the evidence, and should be decided by the presiding judge, and not by us. It rests in his sound discretion, which should be exercised always, not arbitrarily, but with a view to a correct administration of justice, according to law.

The doctrine of "mental anguish," as it is called, was recognized and firmly established in our jurisprudence long before I came to this bench (*Young v. Telegraph Co.,* 107 N. C., 370; *Thompson v. Telegraph Co.,* 107 N. C., 449), by a Court of exceptional ability and learning. It has been repeatedly upheld by other decisions, when the *personnel* of the Court had changed, and it cannot at this late day be successfully assailed as being against the principles of the common law. Having been thus deeply rooted in our jurisprudence, and having received the sanction and approval of our most eminent jurists many years ago, it should now be accepted as an acknowledged principle of law, and the cases in which it is involved should be tried and determined as other cases in which there has been no disagreement as to what is the law as to the cause of action.

We conclude by saying that *Bright v. Telegraph Co.,* 132 N. C., 317, has no special application to this case. It appeared in that case that the message had been filed with the company's operator at 8 o'clock P. M., at Wilkesboro, N. C., to be transmitted to Burlington, N. C., where it was received thirty minutes afterwards, and the operator at Burlington, by the messenger of the company, actually attempted to deliver it, and by negligence failed to do so. We can see at a glance that a very

different question was presented in that case from the one now under consideration. That case has been approved and affirmed frequently by this Court, the courts of other States and jurisdictions, and by the law writers. The plaintiff cannot sustain his contention by anything that was said in that case.

I do not wish to be understood as not concurring with the able judges who took part in deciding the cases of *Young v. Telegraph Co., supra,* and *Thompson v. Telegraph Co., supra,* for the principle, as established by these cases, receives my full assent. I believe that what we call "the doctrine of mental anguish" is based upon a sound principle of common law, which is elastic enough to meet new conditions as they arise, and to adjust itself and its well-settled rules to the ever-changing circumstances of a progressive civilization and the onward march of reform in the administration of justice. It would be a reproach to the law if telegraph companies can wantonly neglect their duty and obligation to their patrons with impunity and without any responsibility for their wrong, committed sometimes without the slightest excuse and under exasperating circumstances. I speak now only for myself, and am not committing the Court, as a body, to my views.

New trial.