T. W. CARSWELL v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 20 December, 1910.)

1. Telegraphs—Office Hours—Waiver.

A telegraph company waives its rules as to reasonable office hours by accepting a message for transmission after its office is closed for the night; and when it appears in a suit for damages for delayed delivery of a telegram that it was accepted for delivery "if there was nothing the matter at the other end of the line," and was sent and received by its agent at the point of destination, the provision as to reasonable office hours is waived there, also.

2. Same—Delayed Delivery—Service Message—Notice to Sender—Negligence.

When a telegram is received after office hours by a telegraph company upon condition that it will be delivered at destination "if there was nothing the matter at the other end of the line,"

and the defense of the company, in an action for damages for delayed delivery, is that delivery could not have been promptly made because it was received at destination after office hours and there was no one by whom to send the message to addressee, the burden is upon the defendant and it is its duty to show that it had notified the sender of the fact; and evidence is insufficient which merely tends to show that a service message was sent back, but not delivered to the sender.

3. Telegraphs—Negligence—Physician—Mental Anguish—Notice—Damages.

A telegram sent to a physician reading, "Come at once. My wife very sick," is sufficient to notify a telegraph company that mental anguish will result to the husband from a negligent delay in its delivery; and the husband may recover damages for the delay, caused by the defendant's negligence, in not sooner having the doctor in attendance upon his sick wife.

WALKER, J., concurring; BROWN and MANNING, JJ., dissenting.

APPEAL by defendant from *Webb, J.*, at September Term, 1910, of McDOWELL.

The facts are sufficiently stated in the opinion of *Chief Justice Clark.*

*Pless & Winborne for plaintiff.*
*Merrick & Barnard for defendant.*

CLARK, C. J. On 16 October, 1908, the plaintiff's wife, who had an infant six days old, was suddenly taken worse. The plaintiff asked the defendant's agent at Nebo to send a message to Dr. Brookshire at Bridgewater, 6 miles away. It was a little after 9 o'clock at night. The agent said that he would send it "if there was nothing the matter at the other end of the line." The message read as follows: "Dr. Brookshire, Bridgewater, N. C.: Come at once. My wife very sick. T. W. Carswell."

The plaintiff paid for the message. The message was received by the operator at Bridgewater, but was not delivered till 12 o'clock at night, when the plaintiff himself passed the station at Bridgewater, and the operator came out and handed him the message and asked him to deliver it to Dr. Brookshire. The plaintiff getting no response from Bridgewater, assumed that all was right at that end, and that the message had been re-

ceived by the operator there (as in fact it had been), and waited for two hours, trusting that the message had been delivered and the doctor would come. But the doctor not arriving, and his wife getting worse, about 11 o'clock he left his wife, who was in such agony that he expected her to die before he returned, and in this great anxiety and mental suffering, he got on his mule and rode down to Bridgewater, where he found the doctor, who immediately returned with him. Dr. Brookshire testified that he was in his office that night from 8 o'clock till 12, when the plaintiff arrived, and would have gone promptly to the plaintiff's wife if he had received the message.

The defendant's operator at Bridgewater testified that he received the message about 9 o'clock, which was after office hours, and that he wired back to the operator at Nebo that he could not deliver it before 11 o'clock. There is no evidence that this message was communicated to the plaintiff. On the contrary, when the plaintiff offered to testify as to what the operator at Nebo told him, the evidence was excluded on the objection of the defendant. The reasonable inference is that he would have testified that the information he received was that the operator at Bridgewater had wired back that he would deliver the message. The plaintiff's conduct corroborates this, for he testifies that he remained for two hours longer waiting for Dr. Brookshire, expecting him to come.

This case is "on all-fours" with *Carter v. Tel. Co.,* 141 N. C., 374, which holds that while the telegraph company can fix reasonable office hours, yet when the operator at the sending office received this message, he waived this regulation; and when the operator at the receiving office took the message, he also waived the office hours regulation, and if he could not deliver the message he should promptly have so wired back. It is true that the operator at Bridgewater did testify that he so wired, but the burden was on the defendant to show that such service message was delivered to the plaintiff, or that without its negligence this could not be done. It is not shown that this service message (if it was sent) was delivered to the plaintiff, and, on the contrary, the plaintiff was not allowed, by reason of defendant's objection, to testify what the agent at Nebo told

him, and his conduct shows that he must have been told that the message would be promptly delivered. The undisputed facts are that the company through its operator at Nebo undertook to send the message and received the plaintiff's money; that the operator at Bridgewater took the message, and that the plaintiff received no notice that the message would not be delivered promptly, as he had a right to expect. The tenor of the message put the defendant on notice that mental anguish would likely result to plaintiff if the message was unreasonably delayed, and his testimony is, and the jury so find, that he suffered great mental agony by the delay. The receiving office at Bridgewater held the message from 9 o'clock till 12, and shows no excuse for the delay, in the opinion of the jury.

In *Cogdell v. Tel. Co.,* 135 N. C., 436, the Court said that "It is the duty of the telegraph company to promptly inform the sender of a message when, for any reason, it cannot be delivered," citing *Hendricks v. Tel. Co.,* 126 N. C., 304; *Laudie v. Tel. Co., ib.,* 431; *Bright v. Tel. Co.,* 132 N. C., 324; *Hinson v. Tel. Co.,* 132 N. C., 467; and *Bryan v. Tel. Co.,* 133 N. C., 603, in all of which it had been so held. The same ruling has been made since in *Green v. Tel. Co.,* 136 N. C., 507; in *Carter v. Tel. Co.,* 141 N. C., 378; and in other cases. In *Suttle v. Tel. Co.* the same doctrine is laid down, the Court citing many cases holding that the telegraph company may waive its office hours, and does so if it receives the message at the sending office, and also at the receiving office, if no objection is communicated back to the sender. In *Cates v. Tel. Co.,* 151 N. C., 500, *Walker, J.,* cites and approves *Carter v. Tel. Co.,* 141 N. C., 378, and *Suttle v. Tel. Co.,* 148 N. C., 480, and pertinently says of the operator at the receiving office in *Carter's case:* "His silence was calculated to mislead the sender, who could have procured the early attendance of her physician at her bedside by other means, if he had known of the true situation. That decision was right, and in perfect accord with our decision in this case." In the present case if the defendant company had communicated to the plaintiff that it could not promptly deliver this message, the plaintiff would have gone at once to Bridgewater, without waiting two hours as he did, witnessing

the agonies of his wife, and in constant expectation of the appearance of the physician. He testifies that his wife was much worse when he left at 11 o'clock, and that he despaired then of ever seeing her alive again.

There was ample evidence to submit the issues of negligence to the jury. The other exceptions are covered by repeated decisions of this Court, and need no discussion.

No error.

WALKER, J., concurring: I would have nothing to say in this case were it not for the suggestion that the opinion of the Court is in conflict with something that was said in *Cates v. Tel. Co.*, 151 N. C., 497. The two cases are in no respect alike, either in their facts or in the law applicable to them. They are as unlike, it seems to me, as they could possibly be. The words taken from *Cates' case* were quoted from the opinion of the *Chief Justice* in *Carter v. Tel. Co.*, 141 N. C., 374, for the purpose of showing the difference between those two cases and of correcting an erroneous impression as to what had been decided in *Carter's case*. In *Cates' case* the message was received for transmission at 8:25 o'clock P. M., at Haw River, and was sent "subject to delay," the sender having been told that it could not be delivered that night unless the telegraph company and the railroad company had joint offices at High Point, which was not the case. The message was not received at High Point until the next morning, as the office of the defendant at that place had been closed for the night and no connection with it could be made until 8 o'clock the next morning, when the message was received by the operator and delivered. We held that there was no liability on the part of the telegraph company if the message was not received at Haw River in time to be transmitted to High Point and received there by the operator within reasonable office hours. The evidence was that the office at High Point had closed at 8 o'clock P. M. In *Carter's case* the message was sent from Spout Springs and received by the operator at Sanford, and the negligence consisted in the fact that the latter received the message for delivery without objection and left the sender to understand that his message would

be delivered that night. In *Oates' case* we referred to *Carter's case* and said: "The two cases differ essentially in this, that in this case the operator at High Point did not receive the message until 8 o'clock the next morning." There was no negligence in delivering the message after it was received at High Point. It is clearly stated in *Carter's case* that, in order to relieve the company from liability, either the operator at the initial point must refuse to accept the message, if it is tendered for transmission after office hours, or, if he sends it, it must appear that the office at the other end had closed, it being after office hours, which are reasonable, or that the operator refused to receive it unless upon condition that it would not be delivered at night, but the next morning, *of which fact the sender is duly notified.* The quotation in *Oates' case* from *Carter's case* is followed immediately, in the latter case, by this language: "Had he done so" (that is, had he notified the sender that the message could not be delivered that night), the latter could have resorted to other means of notifying the doctor. The operator can accept a message after office hours to be sent conditionally, but it is not fair to the sender to keep him in ignorance of the facts, and the law requires that if it cannot be delivered, and especially if it is of an urgent nature, the sender should be informed, so that he may take other steps to notify the physician to whom it is sent and whose services are wanted.

In this case the operator agreed "to send it if there was nothing the matter at the other end of the line." This meant, if the office had not closed at that end or there was nothing to prevent the operator there from receiving it. If there was anything which prevented the operator there from either receiving it or delivering it that night, the sender should have been notified, and, certainly, when the urgency of the message is considered. "It is the duty of the company in all cases where it is practicable to do so, to promptly inform the sender of a message that it cannot be delivered. While its failure to do so may not be negligence *per se,* it is clearly evidence of negligence. In many instances, by such a course, the damage could be greatly lessened, if not entirely avoided. A better address might be given,

mutual friends might be communicated with, or even a letter might reach the addressee. In any event, the sender might be relieved from great anxiety, and would know what to expect. Moreover, it would *tend* to show diligence on the part of the company." *Hendricks v. Tel. Co.*, 126 N. C., 304. Applying that principle to this case, if the sender had been notified that the message could not be delivered, he could have communicated with Dr. Brookshire in some other way, as he afterwards did, and prevented the mental anxiety he suffered from the delay caused by the defendant's negligence in failing to notify him. The plaintiff had the right to suppose that his message had been delivered, if the defendant performed its duty, and it was negligence not to inform him of the true situation. *Shaw v. Tel. Co.*, 151 N. C., 638.

There is evidence in this case from which it can reasonably be inferred that the sending operator was notified that the message had been received and would be delivered, though what he said to the sender was excluded by the court. I think there was sufficient evidence for the jury upon the question of negligence. Whether the period of the plaintiff's mental suffering was long or short cannot affect his right to recover, but only the quantum of damages, and this was a question for the jury.

The opinion of Dr. Brookshire as to the condition of the plaintiff's wife, when he arrived at their home, was relevant, and competent as corroborative and substantive testimony. The objection was based on the ground, I presume, that the plaintiff could not recover damages merely because his wife was ill. That is true; but the testimony was not offered for that purpose. It was relevant to prove that her condition was serious, if not critical, in order that the jury might infer therefrom that the plaintiff suffered mental anguish. It was this fact, coupled with the failure of the physician to come, that produced the mental suffering, and the doctor's testimony was, therefore, but evidence of one of the substantive facts to be established. It was also corroborative of the plaintiff's testimony as to his wife's dangerous condition when he left her. It was just because she was so ill that he wanted the doctor as soon as he

could come, and believing that he had been duly notified, and not knowing why he did not come, was what caused his mental suffering.

There cannot, I think, be any doubt as to the character in which the defendant's operator received the message at Bridgewater. He was acting as agent or operator for the defendant and the railroad company. The message was transmitted by the defendant's operator at Nebo, and the testimony of C. B. Patton, the operator at Bridgewater, shows that he was acting for the defendant. The defendant, in its prayers for instruction, assumes that he was so acting, and we find none which disputes his authority so to act. Such a point cannot be made on a motion to nonsuit when the evidence as to it was introduced by the defendant. We can consider only the evidence introduced by the plaintiff and so much of the defendant's as is favorable to him. The charge was clear and forceful and stated to the jury the real question presented in the case. The pivotal question was, Did the agent at Nebo notify the plaintiff that the message would be delivered that night? and this they answered against the defendant's contention.

BROWN, J., dissenting: The facts in this case as testified to by the plaintiff are that, his wife being quite ill, he desired to summon a physician from Bridgewater, 6 miles distant.

It was past 9 o'clock, and the defendant's offices at Nebo, where plaintiff resided, and at Bridgewater were both closed to business for the night. Plaintiff sought the Nebo operator at his residence and aroused him out of his bed and requested him to send the message. The operator agreed to do so "if there was nothing the matter at the other end of the line."

The message, offered in evidence by plaintiff, is stamped "Received at Bridgewater, 9:30 P. M." As the Western Union wires were closed for the night, it appears in evidence that the message was sent over the railroad block wire, and received by the operator at Bridgewater while working for the railroad. It appears that the operator at Bridgewater, a village of about 100 inhabitants, worked for the Western Union Telegraph Company and the railroad company, jointly, during the day office

hours, which closed at 8 P. M. After that the same operator worked the railroad block wire at night, which governed the running of the trains. It belonged to the railroad, and no business messages were ever received over it. Upon receipt of the telegram in question, the operator at Bridgewater immediately informed the operator at Nebo that he could not deliver the message until 11 P. M., as he was blocking trains for the railroad (a matter of vital importance) and there was nobody awake in Bridgewater by whom he could send it.

The plaintiff testifies that he waited at his residence until near 11 o'clock, and then rode to Bridgewater for the physician, who reached his wife's bedside before 1 o'clock A. M. the same night.

1. The ground upon which the Court bases its opinion is that the operator at Nebo should have at once notified the plaintiff that the message could not be delivered at Bridgewater until after 11 o'clock, so plaintiff could have started at once across country.

I agreed to the opinion of the Court in *Carter's case,* which holds that if for any reason a telegram cannot be delivered it becomes the duty of the company to inform the sender, so he can have opportunity to supply the deficiency. But that doctrine ought not to be applied here, because it must be admitted that there was no waiver of office hours and no unconditional acceptance of the telegram, as in *Carter's case.*

The operator at Nebo accepted the plaintiff's telegram, and got up out of his bed to send it, upon condition that it could be promptly delivered, for that is what the language used means. This is not a waiver of the defendant's rights. The operator could have refused to accept the telegram, and when accepted upon condition the plaintiff is bound by the condition.

In *Cates v. Tel. Co.,* 151 N. C., 501 (which I think is direct authority barring a recovery in this), *Mr. Justice Walker,* quoting from *Carter's case,* says: "We need not discuss that in this case, for, conceding that 7 P. M. was a reasonable hour for closing the defendant's office at Spout Springs, it waived it, so far as sending the message was concerned, by actually sending this message and receiving pay therefor. This was, it is

true, not a waiver as to the receiving office. But that office waived the closing-hour limitation by receiving the message without demur. Had the operator at Sanford immediately replied that he could not undertake to deliver the message until next morning, and would consider it as not received, except on that condition, there would have been no contract to deliver. But the operator at Sanford did not make any objection to the receipt of the message at that hour, and says he did not make any effort to let the sending office know that it would not be delivered."

The very thing that the operator at Sanford failed to do, the operator at Bridgewater did do, viz., notify the Nebo office at once that he could not make delivery. This was in effect a refusal of the Bridgewater operator to receive the message. Thus, according to *Carter's case,* there was no waiver of office hours at Bridgewater. Now, if the Nebo office received the telegram only on condition, and the Bridgewater operator refused to waive office hours, how can plaintiff recover under the authority of *Cates' case* as well as *Carter's?*

2. I think, upon the admitted facts, that the telegraph company is not liable for the acts of the operator at Bridgewater. He was not the agent of the telegraph company after 8 P. M., and not acting for it. After that hour he worked exclusively for the railroad company on its block wire, and received plaintiff's telegram over the railroad's wire, and not over the defendant's.

I know of no principle of law by which the telegraph company can be held responsible for the unauthorized act of a person not pretending to act for it and actually operating the wire of a railroad in operating its trains. So we have it that plaintiff's message was not sent over defendant's wire and not received by its agent. How can the defendant be liable?

3. The court permitted the following evidence to be introduced: The witness was then asked the following question: "What condition did you find Mrs. Carswell in when you arrived? State the extent of her suffering, and whether it appeared to be great or small?"

McDONALD *v.* MacARTHUR.

To these questions and answers thereto the defendant objected. Objection overruled, and the defendant excepted.

A.: "She was suffering from clots. She was suffering considerably."

This action is not brought by the wife, but by the husband to recover damages for his alleged mental anguish in a brief delay in procuring a physician. According to plaintiff's own evidence, he was delayed only one hour in starting for the doctor, and for this supposed one hour's anxiety he has been awarded $300.

It must be admitted that the evidence introduced had no relation whatever to plaintiff's cause of action, and it was well calculated to prejudice and excite the minds of the jury, and tended inevitably to aggravate the damages.

The wife's condition was not brought about by the negligence of the defendant, and the condition the doctor found her in is irrelevant entirely to the issues in this case, and the evidence should have been excluded.

It is not a case of "harmless error," as it was highly prejudicial to defendant.

MR. JUSTICE MANNING concurs in this dissenting opinion.