BROWN and MANNING, JJ., dissenting.
The facts are stated in the opinion of the Court.
This action was brought to recover damages for the negligent delay of the defendant in delivering a telegram, in words and figures as follows:
BRYSON CITY, N.C. 29 January, 1906.
T. M. BATTLE, Andrews, N.C.
Your baby very sick. Come on morning train.
M. T. BATTLE.
The sender was the father of the plaintiff, whose child had been taken suddenly and seriously ill. He and his family, composed of his wife and several children, lived at Andrews, N.C. and his wife and children, on the said day, were visiting at the home of the plaintiff's (631) father, in Bryson City, N.C. The plaintiff, at the time the telegram was sent, had been living in Andrews about seven months and was employed by the Cherokee Extract Company. The distance by rail from Andrews to Bryson City is forty-five miles, and by the public road thirty-five miles. The message was received at Andrews in full time for delivery to the plaintiff early in the evening and prior to 9 o'clock p. m. The messenger boy received it and was informed where the plaintiff lived in the village of Andrews, and, when so informed, he replied that it was too far and too dark at that time to go to *Page 607 
the plaintiff's house for the purpose of delivering the message, and it was not delivered until 11 o'clock the next day. The morning train was due to leave Andrews at 8 o'clock a. m., and, according to the schedule of the railway company, it should have reached Bryson City at 10 o'clock a. m., but it was considerably late in arriving on the 30th of January. The child died at 10 o'clock on the 30th. It was admitted that the plaintiff could not have reached Bryson City by the train before the child died. He left Andrews for Bryson City on the second train and arrived at his father's home about 4 o'clock p. m. of the 30th. The plaintiff was permitted to testify, over the defendant's objection, that if the message had been delivered to him after 6 o'clock on the night of the 29th, or within a reasonable time after it was received by the operator on that night, he could and would have walked to Bryson City and reached his father's home before his child died. Why this evidence was not competent we cannot see. Evidence substantially similar was held to be competent in Bright v. Telegraph Co., 132 N.C. at p. 326, where it is said: "In this connection may be noticed another of the defendant's objections, that the court permitted the witness Cooper to testify that he would have gone to Wilkesboro if he had received the message in time. We are unable to understand why this is not competent. It tended to prove the very fact which the defendant, in the last exception considered by us, asserted it was necessary for the plaintiff to prove in order to recover substantial damages, and it was necessary to prove this fact if the plaintiff sought, as she did by her complaint and evidence, to recover damages for the mental anguish which resulted from his failure to go to Wilkesboro." The case of Bright v.Telegraph Co. has been frequently affirmed, but we need refer to only one of the cases (Hancock v. Telegraph Co., 137 N.C. at p. 503), in which Justice Brown, speaking for the Court, says: "In Bright's case, 132 N.C. 326, the Court (by the Justice who delivered its opinion), referring to defendant's objection to the testimony of Cooper, the addressee, that he would have gone to Wilkesboro had he received the telegram, say that the testimony was (632) not only competent, but indispensable, and uses the following language: `We are unable to understand why this is not competent; it tended to prove the very fact which the defendant, in the last exception considered by us, asserted it was necessary for the plaintiff to prove in order to recover substantial damages, and it was necessary to prove this fact, if the plaintiff sought, as she did by her complaint and evidence, to recover damages for mental anguish, which resulted from his failure to go to Wilkesboro.'"
Whatever the opinion of any other court may be, its conclusion is based upon what, with all possible respect for and deference to the ability and learning of its judges, we think, is reasoning clearly *Page 608 
unsound, and its position is therefore untenable. But we believe a majority of the courts adopt our views. How could the fact be otherwise proved than by the testimony of the addressee, unless the jury are at liberty to infer the fact from the relation of the parties? And even if that be so, it would still be competent to show, by testimony equally as reliable and perhaps more certain in its character, that the addressee would actually have gone to Bryson City that night. There was evidence tending to show that he could have accomplished the journey from Andrews to Bryson City during the night. This evidence tended to corroborate the plaintiff, and was competent.
The defendant complains that the plaintiff and his wife were permitted to testify that their sick child was a boy seventeen months old, could walk and talk, and could have recognized plaintiff, as he called him "papa." This testimony was competent to show the degree of plaintiff's mental anguish, if it was not also competent upon grounds relating to the other features and facts of the case. But the defendant mainly relies upon the fact that the plaintiff was told in the message to "come on the morning train," and that if he had complied with this "instruction," as it is called, he would not have reached the bedside of his child before his death; and, further, that the defendant is not liable for any damages not in the contemplation of the parties at the time of making the contract.Williams v. Telegraph Co., 136 N.C. 82; Kennon v. Telegraph Co.,126 N.C. 232. As a general proposition, it is very true that the plaintiff is entitled to recover only such damages as were in the contemplation of the parties at the time of making the contract, and that the rule established by Hadley v. Baxendale, 9 Exch. Rep., 341, has been applied by us to contracts with telegraph companies, that (633) rule being as follows: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considered either as arising naturally — that is, according to the usual course of things — from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." The question was discussed and the reasons for applying the rule to such contracts was fully stated in Williams v. Telegraph Co., supra. But has the defendant placed the correct interpretation upon this message, and is the view which it takes of the case the humane one? We think not. There are two facts stated in the message — first, the serious illness of plaintiff's child, for it had the croup, sometimes a very dangerous and even fatal disease. The message expressly says: "Your baby is very sick — croup." What meaning did this convey to plaintiff's mind? Why, of *Page 609 
course, that his child was so ill as to require his immediate presence. The added words, "Come on the morning train," were merely intended to impress upon his mind the very serious condition of his child, and the longing of his wife, its mother, and his father, that he would come as quickly as possible.
Although the fact is not distinctly stated in the case, it reasonably and by fair inference appears that if the plaintiff had not casually heard on the streets of the village of Andrews that his child was sick, and gone himself to the telegraph office to inquire if any message had come, he would have received the message too late to take the morning train. The plaintiff was not, in law, bound to adopt the way indicated in the message for reaching the bedside of his dying child. He had the right to act according to the natural instincts of a father and adopt the speediest method of reaching his father's home in Bryson City, where he had the right to infer that his little child, the object of his love and affection, was lying almost in the very throes of dissolution. If he desired to walk to Bryson City, he had the right to do so, and any man of ordinary intelligence, and having a moderate share of the common instincts of humanity, and knowing, too, the affection of a father for his child, and that upon reading the message his first impulsive thought would be to go to it as quickly as possible, might well have contemplated that the plaintiff would pursue the course he did. And yet the defendant retains possession of this message, not only over night, but until 11 o'clock a. m. the next day, without making the least effort to deliver it, and then contends that the plaintiff has no right to recover damages for the mental anguish he suffered. If this (634) is the law, we should remind the people, who hold in our republican form of government all the power the king and his parliament possessed, that "the right divine of kings (the people) to govern wrong," as Alexander Pope said in the "Dunciad," has not yet departed, and we should have some change in the law for the sake of being at least humane, if for no other reason. It would at least prevent the repetition of such wrongs in the future.
If the telegraph companies will not require their employees to act, in the performance of their very important duties to the public and their patrons, with common intelligence and humanity, they must suffer the consequences of their neglect and not complain of the law when they are made to indemnify those whom they have wronged. There is no use to cite authorities for our ruling, although they are abundant, for common sense and a reasonable regard for the rights of others teach us that it must be the correct principle.
The facts, as they appear in the record, disclose, if anything, the grossest case of negligence ever presented to this Court. What right, *Page 610 
in law, or even according to the rule which ordinarily obtains in business transactions of this kind, did the defendant have to withhold from the plaintiff information as to his child's serious illness, which it had been paid to impart to him? The answer to this simple question is too plain to require any further discussion as to its legal and moral duty under the circumstances. It had no such right, and its operator and the delivery messenger should have known it. The verdict against the defendant was a small one and was fully supported by the evidence.
The other exceptions taken by the defendant, who appealed from the judgment of the court, are without any merit.
No error.
BROWN, J., and MANNING, J., dissenting.
(635)