CLARKSON, J., dissenting.
This is an action to recover damages for mental anguish suffered by plaintiff as the result of the alleged negligent failure of the defendant to deliver, within a reasonable time after its receipt at defendant's office in Lexington, N.C. a telegram addressed to the plaintiff, advising him of his mother's death.
At 9:16 a.m., on 1 September, 1932, a telegram was delivered to the defendant at its office in Monroe, N.C. by Mrs. E. M. Flow, a sister of the plaintiff, for transmission and delivery to the plaintiff, at his home near Lexington, N.C. which was in words as follows:
"Monroe, N. Car. 9:16 A. 1 Sept. 1932. Noah Hobbs
R. F. D. 5. Care J. S. Deal, Lexington, N. Car. Mother died this morning at 6:30.
Mrs. M. E. Flow."
This telegram was received at defendant's office in Lexington, N.C. at 9:23, on 1 September, 1932. It was delivered to the plaintiff, by mail, at his home on R. F. D. No. 5, near Lexington, N.C. at 12:30 p.m., on 2 September, 1932, by the wife of J. S. Deal, who had found the telegram in an envelope addressed to the plaintiff, in her husband's mail box. The envelope containing the telegram was deposited in the mail box by the carrier who had left Lexington at 9:00 a.m. that morning, as required by his daily schedule.
Upon his receipt of the telegram, the plaintiff immediately left his home in Davidson County in an automobile, and drove to Monroe, in Union County, a distance of 70 miles. Upon his arrival at Monroe, at about 5:00 o'clock, p.m., on 2 September, 1932, the plaintiff had learned that his mother's funeral had been held that morning at 11:30 o'clock. He testified that the fact that he had not attended his mother's funeral affected him deeply, causing him great suffering in both mind and body. He said: "If I had got the telegram in time, I could have attended my mother's funeral."
The manager of defendant's office at Lexington, N.C. testified as follows:
"At 9:23 a.m., on 1 September, 1932, a telegram addressed to Noah Hobbs, R. F. D. 5, care J. S. Deal, Lexington, N.C. came to my office from Monroe, N.C. I did not know Mr. Hobbs or Mr. Deal. I did not know where either of them lived. Upon receipt of the telegram, which was a death message, I got the telephone directory of the city of Lexington to see if either Mr. Hobbs or Mr. Deal had a telephone. I found that neither of them had a telephone. Their names were not in the directory. I then called the rural operator, and was informed by him that neither Mr. Hobbs nor Mr. Deal had a telephone connecting with *Page 315 
the city exchange. I then called Reed's Exchange, which is in Davidson County, about five or six miles from my office — in the country. I was informed that neither Mr. Hobbs nor Mr. Deal had a telephone connecting with Reed's Exchange. No one at the exchange knew either of them. I then called Churchland Exchange, which is a little further in the country from Lexington than Reed's Exchange. I was informed that neither Mr. Hobbs nor Mr. Deal had a telephone connecting with Churchland Exchange. No one at the exchange knew either of them. The reason I called these two exchanges was that route No. 5 from Lexington goes in the direction of these exchanges, and persons living on said route are served by these exchanges. After I had been unable to locate either Mr. Hobbs or Mr. Deal, I called the agent of the defendant at Monroe, by wire, and advised him that I had been unable to locate either Mr. Hobbs or Mr. Deal, that neither of them had a telephone, and that I had mailed the telegram to Mr. Hobbs, at the address given in the telegram. I mailed the telegram some time before dinner, as I now remember, on 1 September, 1932. The mail for route No. 5, leaves Lexington each morning at 9:00 o'clock. The telegram addressed to the plaintiff left Lexington on the first mail which went out of Lexington for route No. 5 after its receipt.
"The defendant's free delivery limits at Lexington extend one mile from its office. Both Mr. Hobbs and Mr. Deal live beyond the free delivery limits. I did not know either of them on 1 September, 1932, and did not know where either of them lived. Sometimes when I know where the addressee in a telegram lives, beyond the free delivery limits, I take a chance and send the telegram by special messenger, expecting him to pay the charge for delivery. If I know where the addressee lives, and his home is beyond the free delivery limits, I have the sender advised, so that the extra charge for delivery may be paid or guaranteed by him, if he desires us to deliver the telegram by messenger."
Mrs. E. M. Flow, the sender of the message, testified that she paid the amount charged by the defendant's agent at Monroe for the transmission and delivery of the telegram to the plaintiff, and that she was not informed by said agent or by any one else, that an extra charge would be made for the delivery of the telegram to her brother, by a special messenger. She would have been willing to pay the extra charge, if advised by the defendant that such charge was required.
At the conclusion of all the evidence, the court refused to allow defendant's motion for judgment as of nonsuit, but intimated that it would instruct the jury that if they should find the facts to be as testified by the witnesses, they should answer the first issue, to wit: "Did the defendant negligently fail to transmit and deliver the telegram from Monroe, N.C. as alleged in the complaint," "No." *Page 316 
Upon this intimation by the court, the plaintiff submitted to a nonsuit, and appealed to the Supreme Court.
It is not contended on this appeal that there was any evidence at the trial of this action tending to show negligence on the part of the defendant in transmitting the telegram addressed to the plaintiff from Monroe to Lexington. All the evidence showed that the telegram was filed at defendant's office in Monroe at 9:16 a.m. and was received at defendant's office in Lexington at 9:23 a.m., on the same day. The defendant fully performed its contract with the sender and its duty to the sendee of the telegram with respect to its transmission from Monroe to Lexington. On the facts shown by all the evidence, there is and can be no contention to the contrary.
The telegram, however, although received by defendant at its office in Lexington at 9:23 a.m., on 1 September, 1932, was not delivered to the plaintiff until 12:30 p.m. on 2 September, 1932. There was a delay of more than twenty-four hours in the delivery of the telegram after its receipt by the defendant at its office in Lexington. Nothing else appearing in the case, such delay would constitute at least evidence of negligence on the part of the defendant, with respect to the delivery of the telegram, sufficient to carry the case to the jury, and if unaccounted for by the defendant would entitle the plaintiff to a verdict on which the defendant would be liable to the plaintiff for the damages sustained by him and resulting from the negligence of the defendant. It is well settled that where a telegraph company has received a telegram for transmission and delivery to the sendee, and after its prompt transmission to its terminal office, has failed to deliver the telegram to the sendee within a reasonable time, because of its failure to exercise due diligence to make a prompt delivery, the company is prima facie liable to the sendee for any damages he has sustained which resulted from the unreasonable delay to deliver the telegram to him. Hendricks v. Telegraph Co., 126 N.C. 304,35 S.E. 43. In such case the burden is on the defendant, if it denies liability, to offer evidence to rebut the prima facie case for the plaintiff. The burden of the issue involving liability, however, remains on the plaintiff. Such burden is not shifted to the defendant, who may or may not offer evidence to rebut the prima facie case made by the evidence offered by the plaintiff. Speas v. Bank, 188 N.C. 524, 125 S.E. 398. Where all the evidence offered by the defendant rebuts the prima facie case made by the evidence offered by *Page 317 
the plaintiff, and there is no controversy between the parties as to the facts shown by the evidence, the defendant is entitled to an instruction of the court to the jury that if the jury shall find the facts to be as all the evidence tends to show, they should answer the issue involving the liability of the defendant to the plaintiff, in the negative. McIntosh Prac. Pro., p. 632; Bank v. Noble, 203 N.C. 300, 165 S.E. 722;Somersette v. Stanaland, 202 N.C. 685, 163 S.E. 804; Reinhardt v. Ins.Co., 201 N.C. 785, 161 S.E. 528. This principle is not in conflict with the right to trial by jury of controverted issues of fact but affords parties to the action the protection of the law, when there is no controverted issue of fact.
In the instant case, the address of the sendee as shown by the telegram delivered by the sender to the defendant at Monroe, and received by the defendant at Lexington, showed that the plaintiff, Noah Hobbs, and the person in whose care the telegram was to be delivered, J. S. Deal, both lived on Rural Free Delivery Route No. 5, out of Lexington. All the evidence at the trial showed that defendant's manager at Lexington did not know Mr. Hobbs or Mr. Deal, and did not know where either of them lived on Route No. 5. In such case, what was the duty of defendant's manager at Lexington with respect to the delivery of the telegram to the sendee?
The address given in the telegram showed that both Mr. Hobbs and Mr. Deal lived beyond the free delivery limits of the defendant at Lexington, and probably beyond the corporate limits of the city. It was a reasonable inference and the evidence shows such to be the fact, that the sender of the telegram knew these facts, and had given the defendant the only address of the sendee which she knew. In such case, the principle that when the sendee of a telegram cannot be located by the agent of the company, because of an insufficient or erroneous address, given by the sender, it is the duty of the agent to ask, by wire, for a better address, is not applicable. It was manifestly the duty of defendant's manager at Lexington to use reasonable diligence to locate Mr. Hobbs, or Mr. Deal, at the address given by the sender of the telegram. He undertook to perform this duty by the use of the telephone, and it was only after he had been unable to locate either Mr. Hobbs or Mr. Deal, by telephone, that he mailed the telegram to the address given by the sender. The telegram was delivered by mail to J. S. Deal, and by his wife to Mr. Hobbs. Whether the defendant's manager would have been justified in mailing the telegram before he used the telephone for the purpose of locating Mr. Hobbs, or Mr. Deal, under the principle on which Gainey v. Telegraph Co., 136 N.C. 262, 48 S.E. 653, was decided, need not be decided. Having failed to locate either Mr. Hobbs or Mr. Deal by telephone, he was justified in using the mail for the *Page 318 
delivery of the telegram to the address given by the sender. On the facts shown by all the evidence, he was not required to notify the sender that the telegram could not be delivered at the address given by her by special messenger. He had a right to presume that she knew this, when she delivered the telegram to the defendant at Monroe.
The intimation of the court as to the instruction which it would give the jury in this case is supported in principle by the decision in Gaineyv. Telegraph Co., supra, and is in accord with the decision in Garner v.Telegraph Co., 100 S.C. 302, 84 S.E. 829. In that case it was held that the addressing of a telegram to the addressee, "R. F. D. 1," is a direction to the telegraph company to use the mail for delivery, and that the company was not liable for delay thereby occasioned. See 62 C.J., 169. The judgment in the instant case is
Affirmed.